664 N.W.2d 796 (2003)
Thomas J. HALL, Plaintiff-Appellee, and
Sharon A. Hall, Gloria Rogers Zerbes, Terry L. Sancartier, Pearl Tucker, Robert Whall, Jr., James Whall, James W. Elliott, Judith Elliott, Thomas Hall, Shirley A. Hall, Val Jones, Ken Jones, Nancy Kirby, Anthony Thomson, James E. Harland, Bridget Harland, Mark Millikin, Peter Kocefas, Donald Carl, Donna Carl, Theodore D. Schmidt, Rosemary Schmidt, Marshall Damoth, Gladys Damoth, Ralph Allman, Irene Allman, Shawn M. Kraycs, Eddie Coe, Larry Pratt, Barb Hanss Koerner, Douglas E. Hinkle, Gordon Moore, Susan Moore, Jane Trenary, Darrel Metzer, Annette Metzer, Kathleen Prause, Leane Tingstad, Kevin Tingstad, James C. Drudge, Belinda Drudge, Terri Goddard, Alan Scott Hubbard, Richard Peffley, Sherri Peffley, Daniel A. Peterson, Gerald K. Hall, James A. Hatfield, Nancy L. Hatfield, Jeffery A. Prause, Pam Prause, Dale E. Rohde, Marie Rohde, Jean A. Reed, Billy R. Reed, Kevin Sloam, Tammy Trullard, Robert Whall, Ann Whall, Richard A. Benfield, Virginia Benfield, Kathryn Henry, Henry Ford, Monte Ream, Susan Ream, Larry Leclair, Geraldine Leclair, Michael Young, Jennie Pratt, Joane Kraycs, Doria McClain, James A. Wash, Rebecca Wash, Steven Kirby, Deanna Kirby, Craig Delvin, and Shelly Hubbard, Plaintiffs/Counterdefendants-Appellees,
v.
David B. HANSON, Sherry M. Hanson, Jeffrey J. Jerome, and Lauri O. Jerome, Defendants/Counterplaintiffs-Appellees, and
Department of Commerce, Defendant/Counterdefendant-Appellant, and
Department of Natural Resources, Third-Party Defendant/Counterdefendant-Appellant, and
Township of Grayling, Intervening Defendant/Counterdefendant-Appellee.
Thomas J. Hall, Sharon A. Hall, Gloria Rogers Zerbes, Terry L. Sancartier, Pearl Tucker, Robert Whall, James Whall, James W. Elliott, Judith Elliott, Thomas Hall, Shirley A. Hall, Val Jones, Ken Jones, Nancy Kirby, Anthony Thomson, James E. Harland, Bridget Harland, Mark Millikin, Peter Kocefas, Donald Carl, Donna Carl, Theodore D. Schmidt, Rosemary Schmidt, Marshall Damoth, Gladys Damoth, Ralph Allman, Irene Allman, Shawn M. Krayc, Eddie Coe, Larry Pratt, Barb Hanss Koerner, Douglas E. Hinkle, Gordon Moore, Susan Moore, Jane Trenary, Darrel Metzer, Annette Metzer, Kathleen Prause, Leane Tingstad, Kevin Tingstad, James C. Drudge, Belinda Drudge, Terri Goddard, Alan Scott Hubbard, Shelly Hubbard, Richard Peffley, Sherri Peffley, Daniel A. Peterson, Gerald K. Hall, James A. Hatfield, Nancy L. Hatfield, Jeffery A. Prause, Pam Prause, Dale E. Rohde, Marie Rohde, Jean A. Reed, Billy R. Reed, Kevin Sloan, Tammy Trullard, Robert Whall, Ann Whall, Richard A. Benfield, Virginia Benfield, Kathryn Henry, Ford Henry, Monte Ream, Susan Ream, Larry Leclair, Geraldine Leclair, Michael Young, Jennie Pratt, Joane Kraycs, Doria McLain, James A. Wash, Rebecca Wash, Steven Kirby, Deanna Kirby, and Craig Devlin, Plaintiffs/Counterdefendants-Appellees,
v.
David B. HANSON, Sherry M. Hanson, Jeffrey J. Jerome, and Lauri O. Jerome, Defendants/Counterplaintiffs-Appellants/Cross-Appellees, and
County of Crawford, Defendant-Appellee, and
Department of Natural Resources and Department of Commerce, Defendants/Counterdefendants-Appellees/Cross-Appellants, and
Township of Grayling, Intervening Defendant/Counterdefendant-Appellee/Cross-Appellant.
Docket Nos. 222800, 222803.
Court of Appeals of Michigan.
Submitted November 6, 2002, at Lansing.
Decided February 7, 2003, at 9:10 a.m.
Released for Publication April 18, 2003.
*798 Carey & Jaskowski, P.L.L.C. (by William L. Carey and Kathleen Kaufman), Grayling, for David B. and Sherry M. Hanson and Jeffrey J. and Lauri O. Jerome.
Michael A. Cox, Attorney General, Thomas L. Casey, Solicitor General, A. Michael Leffler and James E. Riley, Assistant Attorneys General, for Departments of Commerce and Natural Resources.
Law Offices of Monte J. Burmeister, PLLC (by Monte Burmeister), Grayling, for Grayling Township.
Before: WHITBECK, C.J., and HOOD and KIRSTEN FRANK KELLY, JJ.
*797 PER CURIAM.
The trial court, having concluded as a matter of law that this was a proper action to quiet title, entered a judgment dividing a piece of disputed property. None of the original plaintiffs participates in this appeal. We reverse and remand.

I. Basic Facts And Procedural History
These consolidated appeals arise from a property dispute involving a stretch of land located in Grayling Township, Crawford County. This piece of property is called "Northerly Boulevard," and at some times simply "Boulevard" or "boulevard." This land, which leads to Lake Margrethe, was marked as a "boulevard" on a 1902 plat of the Grayling Park subdivision. The 1902 plat included a statement that the "streets and alleys" on the plat were dedicated to the public's use. The land was also marked as a boulevard on a replat in 1916, which reiterated the public dedication of "streets and alleys." In 1937, the Crawford County Road Commission passed a resolution stating that it was meeting to take over streets. The resolution specified certain streets and alleys as being part of the county road system, including the boulevard under the subheading "Grayling Park." Approximately three years later, on July 5, 1940, the road commission passed a resolution expressing a desire to vacate certain streets, including the boulevard. On August 20, 1940, the road commission passed a resolution stating that it was amending the July 5, 1940, resolution, in part to strike the reference to the boulevard. However, while the road commission recorded the July 1940 resolution that vacated the boulevard in February 1954, it did not record the August 1940 resolution purporting to amend the July 1940 resolution. Further confusing the nature of the boulevard was a circuit court order entered in October 1940 vacating the plat of some of the streets in the Grayling Park subdivision, but not the boulevard at issue.
The boulevard was virtually unused until the mid-1960s, when the road commission paved a small portion of it. This paved strip extended through a wooded area toward the lake shore, but stopped short of the lake because of a steep decline toward the water. For about two years, the road commission also "punched" a hole in the snow banks to allow vehicles to turn around. Additionally, however, Grayling Township assessed taxes on a portion of the property, which it collected from David B. and Sherry M. Hanson.
In the 1990s, the numerous plaintiffs sued David Hanson, Sherry Hanson, Jeffrey *799 Jerome, and Lauri Jerome, who own private property abutting the boulevard. Plaintiffs alleged that the Hansons and the Jeromes interfered with the public use of and wrongly claimed title to the boulevard, which was dedicated and accepted as a public street or alley. Plaintiffs wished to use the boulevard to gain access to Lake Margrethe. The Hansons and the Jeromes filed a countercomplaint seeking, among other things, to quiet title to the disputed property in themselves and to enjoin plaintiffs from doing anything other than accessing the surface of the lake for reasonable activities.[1] Through a variety of procedures, including joinder and intervention, the Department of Commerce,[2] the Department of Natural Resources, Grayling Township, and the Crawford County Road Commission became defendants in the action.
Once the proceedings in this case commenced, the trial court granted the road commission's motion for summary disposition, dismissing the commission from the case. The trial court also granted the motion for summary disposition brought by the Hansons and the Jeromes regarding the use of the lake at the end of the boulevard, permanently enjoining certain activities by nonproperty owners, such as sunbathing and erecting permanent boat moorings, but allowing one public dock to be erected for public use. Additionally, the trial court dismissed the majority of individual plaintiffs from this case when they failed to comply with discovery. Though the state Departments of Commerce and Natural Resources (the state parties) argued in their own motion for summary disposition that the Hansons and the Jeromes could not proceed on a quiet title theory because the Land Division Act (LDA), M.C.L. § 560.101 et seq., controlled the procedures and outcome in this case, the trial court denied the motion. In doing so, the trial court agreed with the Hansons and the Jeromes that there was a question of fact concerning whether the land had been privately owned since 1954, when the road commission recorded the resolution vacating the boulevard.
At trial, all the remaining governmental parties, including Gaylord Township, argued that the disputed boulevard was a public road because it had been dedicated to the public and the road commission had accepted that dedication. In contrast, the Hansons and the Jeromes argued that no proper governmental entity had ever accepted the land dedicated as the boulevard, much less in a timely manner, which meant that, as the adjoining property owners, the property constituting the boulevard had reverted to them. Alternatively, the Hanson and Jerome parties contended that if the dedicated property had been accepted in a proper and timely fashion, the road commission had abandoned the property in a July 5, 1940, resolution, which was recorded on February 6, 1954. As further evidence of abandonment, they noted that, in 1979, the Hansons had recorded a deed describing part of their property as "part of the vacated boulevard," the boulevard had not been included in three road certifications following 1940, and Grayling Township had taxed the Hansons for a portion of the boulevard, as if it were private property, not a public street.[3]
*800 After a bench trial, the trial court concluded that a portion of the boulevard from North Portage Avenue to Lake Margrethe, including "all the paved strip and a 5 foot to 7-1/2 foot strip on each side thereof and encompassing the level usable portion of Northerly Boulevard" would be vested in Grayling Township to be held in trust for the public. The trial court ordered that the portion of the boulevard south of that vested in Grayling Township and adjoining the Hansons' property be vested in the Hansons. Similarly, the trial court ordered that the remaining portion of the boulevard, north of that vested in Grayling Township and adjoining the Jeromes' property, would be vested in the Jeromes.

II. Basis For Action

A. Standard Of Review
The state[4] parties argue that the trial court erred by trying this matter as a quiet title action rather than as an action to vacate a road under the LDA. This is a question of law, which we review de novo.[5]

B. The Controversy
The Hanson and Jerome parties framed their countercomplaint, in pertinent part, as an action to quiet title under M.C.L. § 600.2932(1). This statute, which is part of the Revised Judicature Act, provides that
[a]ny person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.[6]
The Revised Judicature Act explicitly makes actions to quiet title "equitable in nature."[7] Although not using this term of art, the Hansons and the Jeromes contended that the 1902 and 1916 plats of the boulevard were clouds on their title to this property. A "cloud on title" is
[a]n outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and on its face has that effect, but can be shown by extrinsic proof to be invalid or inapplicable to the estate in question.[8]
Historically, an action to quiet title has been an appropriate way of lifting a cloud on a title.[9] If valid, these plats would make the boulevard a public street, not their private property. However, the Hansons and the Jeromes contended, these plats were not valid because the road commission had never accepted them in a timely manner. Even if the road commission had accepted the plats in a timely manner, the Hansons and the Jeromes argued, the road commission had abandoned the boulevard no later than *801 when it recorded the July 1940 resolution in 1954, making the boulevard their private property for decades. Further, they contended that there was no evidence that the township had ever accepted the boulevard either formally or informally, and thus abandonment by the road commission was sufficient to make this property private. Because this was private property, the Hansons and the Jeromes maintained that an action to quiet title was the appropriate way to clarify as a matter of law that they owned the boulevard in fee simple.
Nevertheless, the state parties argued that the LDA has a separate process for vacating, correcting, or revising a "recorded plat."[10] In other words, the state parties essentially contended that the Hansons and the Jeromes were seeking to have the portion of the boulevard vacated from the plats to return the boulevard to private property. According to the state parties, the boulevard was public land because it had been dedicated to the public, formally accepted in 1937 or accepted by other informal means, excluded from the roads the road commission indicated it intended to vacate in the August 1940 resolution, and never vacated in the 1940 judicial proceeding vacating other public streets in the subdivision. Even if the road commission had abandoned the property, the state parties maintained, the boulevard would have reverted to township ownership, and would not have become private property. As a result, the state parties argued that the Hansons and the Jeromes could bring an action to vacate, correct, or revise the plats under the LDA, but could not bring an action to quiet title to the boulevard as a way to eliminate any effect the plats would have on the title to their respective pieces of property. Implicit in the state parties' argument was the assertion that actions to quiet title must be between private landowners concerning private property, and cannot concern public property.
When the trial court ruled on this issue before trial, it did so in the context of a motion for summary disposition under MCR 2.116(C)(4), in which the state parties challenged the trial court's jurisdiction to hear the quiet title action. The trial court did not see conclusive proof of either theory regarding the proper legal basis on which to proceed because there was a factual debate in the record concerning whether the boulevard was private or public. As the trial court said, the arguments in favor of quieting title had "some merits [because of the argument] ... that it's private property," citing the argument by the attorney for the Hansons and the Jeromes that they were "claiming it [the boulevard] under a private chain of title." The trial court recapitulated this reasoning, saying:
... Mr. Carey [the attorney for the Hansons and the Jeromes] is asserting that it's [the boulevard] private and it's been private since at least 1954, and they've [the Hansons, Jeromes, and their predecessors] maintained it. And, not only do they have the [July 1940] resolution, they relied on the resolution which was the only thing of record, and they relied on the [1979] deed....
The trial court, acknowledging that the Hansons and the Jeromes had expressly selected quieting title as the legal basis for their action, said that they were "stuck with" that theory and had even conceded that if the trial court found the land to be public, then they would be "dead," meaning that they would lose on the claim. The trial court, responding to an argument by the plaintiffs' attorney that only the Hansons' *802 deedand not the Jeromes' deedreflected ownership of any part of the boulevard, said that it was likely to receive evidence from a surveyor, and that the Hansons and the Jeromes still shouldered the burden at trial of proving the land was private. Though the state parties challenged the validity of the 1979 warranty deed purporting to grant the Hansons part of the boulevard, the trial court noted that the Hansons and the Jeromes had identified the July 1940 resolution that the road commission had recorded in 1954 as a legal basis for the description of the property in the 1979 warranty deed.
The state parties also maintained that even if the road commission had abandoned the boulevard, it would revert to Grayling Township, not the Hansons and the Jeromes as the abutting property owners, because the township was presumed to have accepted the dedication. The state parties asserted that the only way to contradict the township's presumed acceptance of the dedication was through an action under the LDA. The trial court, however, believed that this was simply part of the factual dispute that would be settled at trial. Accordingly, the trial court denied the motion for summary disposition.
Following the bench trial, the trial court issued written factual findings in an opinion. In the opinion, the trial court acknowledged the state parties' jurisdictional challenge to the proceeding as a quiet title action. While the trial court clearly concluded that the quiet title action was the proper form for the case, which is why the trial court invoked its equitable powers,[11] the trial court did not explain why it rejected the state parties' argument that the LDA applied.
Further, the trial court never directly found whether or how the road commission accepted the dedication of the boulevard. Instead, the trial court found that Grayling Township had accepted part of the boulevard informally by paving it in 1966, but had not accepted the land on either side of this paved area. In reaching this decision, the trial court rejected testimony that fire trucks had used the boulevard earlier in the century to access the lake, noting that the trees alongside the paved area were as much as six feet in diameter, logically precluding any use by vehicles for many, many years. The trial court cited the public use of the paved strip and the failure of the Hansons and the Jeromes to object to that use as further evidence that the paved area had been made public.

C. Jurisdiction
The parties' dispute regarding whether this was properly an equitable action to quiet title or should have been an action under the LDA is not at all new. In Binkley v. Asire,[12] the plaintiffs brought an equitable action to quiet title against a township, board of county road commissioners, board of county supervisors, and other landowners concerning platted land that had been dedicated to the public.[13] The plaintiffs also asked for relief under the statutory scheme governing plats then in effect.[14] The plaintiffs asked the circuit court to vacate the plat and revise it to grant them title to the disputed property, alleging that the public had never used the *803 platted land, that the land could be used in a better way if made private, and that the township had never accepted the dedication.[15] The plaintiffs also asked the trial court to do equity in the case.[16] The trial court, however, concluded that
the proceeding was not in fact one to quiet title but, rather, for the vacating, amending and revising of the plat, calling attention to the fact that he had authority to transfer the case to the law side of the court. However, based on the language of the statute relating to the power of the court to vacate or alter plats, he [the trial court judge] expressed the opinion that such a proceeding may be maintained in equity.[17]
As a result, the trial court treated the case as an action to quiet title, finding support in the evidence to vacate certain parts of the plat.[18] By "decree," the trial court "vacat[ed], revis[ed], and alter[ed]" the plat as the plaintiffs had requested.[19]
On appeal, the Michigan Supreme Court in Binkley questioned the trial court's decision to treat the case as an action to quiet title.[20] The Supreme Court phrased the issue as "whether equity ... has jurisdiction to entertain a petition for the vacating, altering, amending, or revising of a plat.[21] Considering language in the version of the plat act then in effect, the Supreme Court noted that
[t]here is no provision in the statute specifying that a party desiring to obtain relief by way of the vacating, altering, amending, or revising of a plat may invoke the aid of equity.... Had it been intended to invest equity with jurisdiction, we have no doubt that appropriate language to that end would have been used. The fact that this was not done indicates the absence of any such intent. The prior decisions of this Court clearly recognize such a proceeding under the plat act as an action at law of special character.[22]
Accordingly, the Supreme Court concluded that the trial court had erred in treating the case as an equitable action to quiet title, rather than a legal action under the plat act.
This conclusion did not end the analysis in Binkley. Rather, the Supreme Court then proceeded to examine the consequences of this error, determining that the proceedings amounted to "a trial of the controversy on the merits.[23] Because this error did not deprive appellant, or any other party to the case, of any substantial right or privilege, the Supreme Court declined to require the parties to try the case again.[24] Instead, the Supreme Court set aside the trial court's decree, remanded the case to be transferred to the law side of the trial court on a party's motion, and allowed the trial court at law to consider the facts of the case under the plat act.[25] The Supreme Court did not retain jurisdiction in the matter.
Binkley has garnered virtually no attention since its publication in 1952. It has been cited only once in subsequent published *804 case law, and not for the proposition that the statutory process is the proper manner to vacate a plat.[26]Kraus v. Dep't of Commerce,[27] a seminal case in this area of property law, did not address this issue, even though the trial courts in one of the underlying actions had acted in equity, quieting title to the disputed land. This Court considered a similar question in Hill v. Houghton Twp.,[28] but did so without mentioning Binkley, which led to an inconsistent result. In Hill, plaintiff Raymond Hill brought a quiet title action under M.C.L. § 600.2932 against Houghton Township and Keweenaw County, alleging that he had acquired title to a piece of property described as a "public square" through adverse possession.[29] The township and the county moved for summary disposition, arguing that it is legally impossible to obtain public land by adverse possession.[30] The trial court agreed that Hill could not acquire this public land by adverse possession, and added that it thought that Hill's suit was nothing more than "an attempt to amend a duly recorded plat and fails to comply with the requirements of the Michigan Plat Act....[31]
On appeal, Hill presented a novel argument concerning why the land at issue should be excluded from the prohibition in case law against acquiring public land by adverse possession.[32] This Court rejected that argument, agreeing with the trial court that Hill could not acquire the land by adverse possession.[33] Despite this neat conclusion to the case, this Court observed that the trial court's alternative grounds for its ruling, which concerned Hill's failure to plead a cause of action under the plat act, was erroneous.[34] This Court explained that Hill's complaint did not invoke the plat act and plaintiff, therefore, was not required to comply with any of the act's prerequisites before bringing suit.[35] Rather, defendants in this sort of case may assert as an affirmative defense, alleged application of and noncompliance with the Michigan Subdivision Control Act of 1967 and, particularly, 221-228.[36] In sum, the Hill Court announced its perspective that: (1) trial courts have jurisdiction to take this sort of case as a quiet title action on the basis of the theory that the property at issue is privately owned; (2) the defendants may claim that the property is actually in a recorded plat, as having been dedicated to the public and accepted by a proper authority, and use the Subdivision Control Act as an affirmative defense to the quiet title action; and (3) the trial court has the ultimate responsibility of finding whether the property at issue is private or public because it was dedicated in a plat, and therefore whether the plaintiff's failure to follow the LDA process was fatal to the claim of ownership to the property. Aside from the fact that this Court has absolutely no authority to depart from *805 Supreme Court precedent,[37] this conclusion was nonbinding dictum because the Court affirmed the trial court on the basis of the adverse possession issue, and therefore the jurisdictional issue was not essential to the holding.[38]
As we see it, even though today's courts no longer observe the procedural distinctions between actions at law and equity that were prominent in Binkley,[39]Binkley controls the outcome of this case, and we need not address the remaining issues. Because the Hansons and the Jeromes sought to vacate or otherwise alter the plats dedicating the boulevard to the public, they should have brought their countercomplaint pursuant to the LDA. However, because the bench trial in this case was full and fair, like the Binkley Court, we see no reason to remand for all new proceedings under the LDA. That the arguments in the trial court suggest that the Hansons and the Jeromes purposefully chose not to proceed under the LDA only confirms this as the correct course of action. Rather, on remand, if the Hansons and the Jeromes amend their pleadings to include a claim to vacate, revise, or alter the plats under the LDA, the trial court may then reconsider the evidence within this statutory framework, taking additional evidence only if necessary. In doing so, the trial court would be well advised to consider whether the November 19, 1937, resolution by the board of the road commission constituted a formal acceptance of the boulevard under the McNitt Act.[40] We express no opinion regarding whether either the road commission or the township accepted part or all of the boulevard in a sufficiently timely manner following the dedication, or what effect the various factors regarding the road commission's alleged abandonment of the boulevard have on the outcome of this case under the LDA.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] See Jacobs v. Lyon Twp. (After Remand), 199 Mich.App. 667, 502 N.W.2d 382 (1993).
[2] The Department of Commerce is now called the Department of Consumer and Industry Services.
[3] Although none of the parties or the trial court noted it, the road commission expressly stated as one of its affirmative defenses:

1. That the real property complained of in Plaintiffs' amended complaint [the disputed boulevard] is not within the jurisdiction or ownership of Defendant Road Commission for Crawford County.
2. That the real property complained of in Plaintiffs' amended complaint has previously been properly vacated and title vested in Co-Defendants Jerome and Hanson. [Emphasis added.]
[4] Evidently, Grayling Township agrees with the state parties' position.
[5] In re Jude, 228 Mich.App. 667, 670, 578 N.W.2d 704 (1998).
[6] MCL 600.2932(1).
[7] MCL 600.2932(5).
[8] Black's Law Dictionary (6th ed, 1990), p 255.
[9] See Black's Law Dictionary (6th ed, 1990), p 255; see also Emig v. Frank P Miller Corp., 238 Mich. 695, 214 N.W. 144 (1927) (explaining concept of "cloud on title" and an action to quiet title as the appropriate remedy).
[10] See M.C.L. § 560.221.
[11] See McKay v. Palmer, 170 Mich.App. 288, 293, 427 N.W.2d 620 (1988) ("A suit to quiet title or remove a cloud on a title is one in equity and not at law.").
[12] Binkley v. Asire, 335 Mich. 89, 55 N.W.2d 742 (1952).
[13] Id. at 91, 92-93, 55 N.W.2d 742.
[14] Id. at 93, 55 N.W.2d 742.
[15] Id. at 92, 55 N.W.2d 742.
[16] Id.
[17] Id. at 93, 55 N.W.2d 742 (citation omitted).
[18] Id. at 93-94, 55 N.W.2d 742.
[19] Id. at 94, 55 N.W.2d 742.
[20] Id. at 96, 55 N.W.2d 742.
[21] Id.
[22] Id. at 96-97, 55 N.W.2d 742.
[23] Id. at 97, 55 N.W.2d 742.
[24] Id. at 97-98, 55 N.W.2d 742.
[25] Id. at 98, 55 N.W.2d 742.
[26] See In re Gondek, 69 Mich.App. 73, 74, 244 N.W.2d 361 (1976) (considering burden of proof under Subdivision Control Act).
[27] Kraus v. Dep't of Commerce, 451 Mich. 420, 423, 442, 444, 547 N.W.2d 870 (1996).
[28] Hill v. Houghton Twp., 109 Mich.App. 614, 311 N.W.2d 429 (1981).
[29] Id. at 615, 311 N.W.2d 429.
[30] Id. at 616, 311 N.W.2d 429.
[31] Id.; see 1929 PA 172.
[32] Hill, supra at 616, 311 N.W.2d 429.
[33] Id. at 617, 311 N.W.2d 429.
[34] Id. at 618, 311 N.W.2d 429.
[35] Id.
[36] Id.
[37] See People v. Beasley, 239 Mich.App. 548, 556, 609 N.W.2d 581 (2000).
[38] See McGoldrick v. Holiday Amusements, Inc., 242 Mich.App. 286, 292 n. 2, 618 N.W.2d 98 (2000).
[39] See Const 1963, art 6, § 5; MCL 600.223(4); MCR 2.101(A).
[40] See Christiansen v. Gerrish Twp., 239 Mich.App. 380, 383 n. 2, 385, 608 N.W.2d 83 (2000) (McNitt Act, 1931 PA 130, allowed counties to assume control over township roads and other public roads in recorded plats).