**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED JUNE 3, 2011

S T A T E   O F   M I C H I G A N

SUPREME COURT

FLORENCE BEACH, CYNTHIA B.
GUTHRIE, DONALD E. JAEKLE, JR., as
Trustee of the ANN B. JAEKLE
REVOCABLE TRUST, LILLIAN B.
MUMAW, and DWIGHT E. BEACH, JR.,

       Plaintiffs/Counterdefendants/
       Appellees,

v                                   No. 139394

TOWNSHIP OF LIMA,

       Defendant/Counterplaintiff/
       Appellant,

and

JEFFREY V. MUNGER,

       Defendant.

BEFORE THE ENTIRE BENCH

Young, C.J.

This case requires us to consider whether a plaintiff who seeks to establish an adverse possession claim that would affect property in a recorded plat must file a claim under the Land Division Act (LDA), MCL 560.101 *et seq.*, if the plaintiff is not expressly requesting that the plat be vacated, corrected, or revised. We hold that an action that seeks to establish a substantive property right arises independently of an LDA action to vacate, correct, or revise a recorded plat. It is only after such a property right has been recognized that the need arises under the LDA to revise a plat that does not reflect the newly recognized property right. Until that property right is legally recognized, the LDA is inapplicable. The language of the LDA and our cases analyzing the LDA demonstrate that an LDA action is appropriate when a party's interest arises from or is traceable to the plat or the platting process.

An action to quiet title by adverse possession confers judicial recognition that the possessor acquired marketable title of record to the property at issue. A successful quiet title action also establishes a substantive property right that was not previously shown within the plat. Without possessing record title to the property, no one, including plaintiffs, had a basis on which to request an alteration of the plat under the LDA. Therefore, plaintiffs were not required to proceed under MCL 560.221,[1] which allows a circuit court to vacate, correct, or revise a plat but does not "enable a court to establish an

_____

[1] MCL 560.221 provides that "[t]he circuit court may, as provided in sections 222 to 229 vacate, correct, or revise all or a part of a recorded plat."

2

otherwise nonexistent property right."[2]  Accordingly, we affirm the judgment of the Court of Appeals.  However, we order the circuit court to strike the portion of its order that corrected the plat to reflect plaintiffs' successful quiet title action because plaintiffs did not request that relief.

## I. FACTS AND PROCEEDINGS

The dispute in this case arises from a disagreement between plaintiff Florence Beach[3] and defendant Lima Township (the township) over property rights to areas of land shown as platted streets on the Harford Village plat.  The Harford Village plat, which was made and recorded in 1835, has remained unaltered since its execution.  It consists of six blocks arranged in two rows of three.  Blocks I, II, and III, which are the relevant blocks here, are bordered to the south by Jackson Road, a county road that runs east to west. Block I is bordered to the west by West Street, a county road that runs north and south. The other relevant streets shown on the plat, North Street, East Street, and Cross Street, have never been developed or used as roads.

Through several conveyances that occurred in 1854, 1881, and 1897, the Beach family acquired the area of land now known as the Beach Family Farm.  In particular, the Beach Family Farm consists of all of the lots in Blocks II and III of the plat.  In 1954, the

---

[2] *Tomecek v Bavas*, 482 Mich 484, 496; 759 NW2d 178 (2008).

[3] After Ms. Beach filed this action, the circuit court ordered the remaining plaintiffs joined as necessary parties because they each had an interest in the Beach Family Farm, which plaintiffs assert includes the disputed platted streets.  For ease of reference, we will generally refer to plaintiffs collectively.

township purchased lots in Block I, which is currently the site of a community hall. In 2004, the township purchased several more lots in Block I, intending to build a fire department substation. The township also intended to use and develop part of North Street and part of Cross Street as roads for ingress and egress to the substation.

Plaintiffs disputed the township's right to use the undeveloped property designated as streets on the plat and filed the instant action to quiet title to the areas platted as North, East, and Cross Streets based on adverse possession. The township filed a counterclaim to quiet title with regard to its right to the platted streets. The parties then filed cross-motions for summary disposition.

The township moved for summary disposition under MCR 2.116(C)(8) and (10), arguing that plaintiffs' action should be dismissed because they were required to file an action under the LDA to vacate portions of the plat. Plaintiffs contended in their motion for summary disposition, filed under MCR 2.116(C)(8), (9), and (10), that there was no genuine question of material fact that they had acquired title by adverse possession.

The circuit court denied the township's motion but ordered an evidentiary hearing on plaintiffs' motion. Following the hearing, the court granted plaintiffs' motion for summary disposition. The circuit court found that large trees, at least 100 years old, were growing in the middle of the areas platted as streets and that the Beach family had adversely possessed the disputed property by farming, as well as by maintaining private trails and fences on the disputed property. The circuit court held that plaintiffs had established the elements of adverse possession and that plaintiffs were not required to proceed under the LDA. Although plaintiffs had not requested such relief, the court

4

ordered that "[t]o the extent that it is necessary the Harford Plat shall be corrected to remove Cross, North, and East Street[s] . . . ."

On appeal, the Court of Appeals affirmed.[4] In response to the township's argument that plaintiffs were required to file their claim under the LDA, the Court of Appeals held that "because plaintiffs did not expressly seek in this action 'to vacate, correct, or revise a dedication in a recorded plat,'" an action under the LDA was not required.[5] The Court of Appeals construed our decisions in *Martin v Beldean*[6] and *Tomecek v Bavas*[7] as supporting the proposition that "akin to quieting title, resolution of underlying disputes regarding the nature, character, and scope of existing property rights that could potentially lead to plat revisions may be undertaken in the context of an LDA action, but it is not mandatory."[8] The Court of Appeals also concluded that *Martin* and *Tomecek* permit "a bifurcated approach, involving, first, a determination regarding the nature, character, and scope of the existing property interests being disputed by the parties and, second, an alteration of the plat map, if necessary, so that it is consistent with

---

[4] *Beach v Lima Twp*, 283 Mich App 504; 770 NW2d 386 (2009).

[5] *Id*. at 509.

[6] *Martin v Beldean*, 469 Mich 541; 677 NW2d 312 (2004).

[7] *Tomecek*, 482 Mich 484.

[8] *Beach*, 283 Mich App at 518.

5

the property interests as determined by the court."[9]  The township subsequently sought leave to appeal, which we granted.[10]

## II.  STANDARD OF REVIEW

We review de novo a decision on a motion for summary disposition.[11]  We also review de novo questions of statutory interpretation.[12]  In addition, whether plaintiffs were required to bring their action under the LDA is a question of law that we review de novo.[13]  An action to quiet title is an equitable action that we also review de novo.[14]

## III.  ANALYSIS

This Court has long recognized the common law doctrine of adverse possession,[15] which the Legislature has since codified.[16]  To establish adverse possession, the party

---

[9] *Id*. at 520 (emphasis omitted).

[10] The order granting leave to appeal directed the parties to brief only "whether a plaintiff who seeks to establish an adverse possession claim that would affect property in a recorded plat must file a claim under the Land Division Act, MCL 560.101 *et seq*., if the plaintiff is not expressly requesting that the plat be vacated, corrected or revised." *Beach v Lima Twp*, 485 Mich 1036 (2010).

[11] *Woodman v Kera LLC*, 486 Mich 228, 236; 785 NW2d 1 (2010).

[12] *Dep't of Transp v Tomkins*, 481 Mich 184, 190; 749 NW2d 716 (2008).

[13] *Martin*, 469 Mich at 546.

[14] *Walker v Bowen*, 333 Mich 13, 20; 52 NW2d 574 (1952).

[15] See *Sanscrainte v Torongo*, 87 Mich 69; 49 NW 497 (1891).

[16] See MCL 600.5801, which provides in part:

> No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone

6

claiming it must show "clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right."[17] After the statutory period ends, the record owner's title is extinguished[18] and the adverse possessor acquires "legal title" to the property.[19] Acquisition of title in this manner includes "the right to defend the possession and to protect the property against the trespass of all others."[20] However, the title acquired by adverse possession is neither record title nor marketable title until the adverse possessor files a lawsuit and obtains a judicial decree.[21] Thus, until an adverse

> through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.
>
> * * *
>
> (4) In all other cases under this section, the period of limitation is 15 years.

[17] *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957) ("It is elementary that the burden of proving adverse possession rests upon the party who alleges it . . . ."); MCL 600.5801.

[18] "Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession." *Gorte v Dep't of Transp*, 202 Mich App 161, 168-169; 507 NW2d 797 (1993), citing *Gardner v Gardner*, 257 Mich 172, 176; 241 NW 179 (1932).

[19] *Miller v Miller*, 100 Mich 563, 564; 59 NW 242 (1894).

[20] *Zabowski v Loerch*, 255 Mich 125, 128; 237 NW 386 (1931) (citation and quotation marks omitted).

[21] See *Escher v Bender*, 338 Mich 1, 7-8; 61 NW2d 143 (1953) ("Title established through adverse possession is free from encumbrance and of a character to assure quiet and peaceful enjoyment . . . , but it is not a marketable title of record until there has been

7

possessor obtains the necessary judicial decree, there is no record of the adverse possessor's ownership interest to verify whether the possessor actually satisfied the elements of adverse possession. The circuit court ruled that the Beach family had established the elements of adverse possession and acquired title to the land before 1907.[22] Consequently, the judicial decree quieting title in plaintiffs settled any ownership claims of the township and conferred marketable title of record to the disputed property on plaintiffs.

The question posed by this case is whether a nonrecord property holder seeking to establish marketable title by proof of adverse possession must bring such an action under the LDA, rather than solely as an action to quiet title.

The LDA became effective on January 1, 1968. This act and the amendments to it are the most recent manifestations of the Legislature's regulation of platting.[23] In

---

a judicial determination of such title."); *Deane v Rex Oil & Gas Co*, 325 Mich 625, 631; 39 NW2d 204 (1949) ("To show a record title by adverse possession requires a suit and the recording of a decree.").

[22] Beginning in 1907, Michigan law precluded obtaining title to publicly owned property through adverse possession. See 1907 PA 46; *Arduino v Detroit*, 249 Mich 382, 387; 228 NW 694 (1930).

[23] As we noted in *Martin*, 469 Mich at 543:

> In the earliest days of this state, indeed, even before statehood, in order to allow townships to be subdivided into discrete areas containing, for example, residential lots, dedicated streets, alleys, parks, etc., plat legislation was enacted. After Michigan became a state in 1837 there were numerous statutes amending and revising the requirements for recording and changing plats over the years. Further, in 1873 Michigan began centrally maintaining a file of all plats with the State Treasurer so that

particular, the LDA provides a process for surveying and marking subdivided property, as well as for recording with the local municipality the information compiled on a plat.[24] The LDA also permits a circuit court to vacate, correct, or revise a recorded plat,[25] which the LDA defines as a "map."[26] A land plat describes underlying property interests in conformity with record ownership as nearly as practicable.[27]

For the purposes of this case, the most pertinent portion of the LDA, MCL 560.222, provides:

> Except as provided in section 222a,[28] to vacate, correct, or revise a recorded plat or any part of a recorded plat, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located.

In addition, MCL 560.223 requires that the complaint set forth "[t]he part or parts, if any, sought to be vacated and any other correction or revision of the plat sought by the plaintiff" and "[t]he plaintiff's reasons for seeking the vacation, correction, or revision." MCL 560.224a sets forth the parties that must be joined in actions under the LDA.[29] And

---

interested individuals could inspect them and ascertain the rights and limitations of a given plat.

[24] *Tomecek*, 482 Mich at 495 (opinion by KELLY, J.).

[25] *Id.*; MCL 560.221.

[26] MCL 560.102(a) ("'Plat' means a map or chart of a subdivision of land.").

[27] See MCL 560.206(1).

[28] MCL 560.222a refers to public utility easements and is not relevant to this case.

[29] These parties include the owners of record title of each lot or parcel of land within 300 feet of the lands described for vacation or revision; the municipality where the plat is

9

MCL 560.229 requires a plaintiff to record the judgment after the entry of an order for vacation, correction, or revision of a plat.[30]

The creation, termination, and vacation of plats are controlled by the statutory authority of the LDA. Consequently, "the exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat is a lawsuit filed pursuant to MCL 560.221 through 560.229."[31] Requiring a lawsuit that seeks to alter any part of a plat to be filed under the LDA ensures that the plats on file remain accurate.[32] However, "[t]he LDA was never intended to enable a court to establish an otherwise nonexistent property right. Rather, the act allows a court to alter a plat to reflect property rights already in existence."[33]

We conclude that plaintiffs, who filed an action to quiet title based on adverse possession, were not required to proceed with an action under the LDA. Plaintiffs' quiet

---

located; the director of the Department of Energy, Labor, and Economic Growth (now the Department of Licensing and Regulatory Affairs); the drain commissioner; the chairperson of the board of county road commissioners; public utilities with installations or equipment in the plat; and the directors of the state transportation department and the Department of Natural Resources if the plat includes a state highway. MCL 560.224a.

[30] MCL 560.229 provides:

> Within 30 days after entry of judgment, for vacation, correction, or revision of a plat, plaintiff shall record the judgment in the office of the register of deeds. The register of deeds shall place on the original plat the date, liber, and page of the record of the court's judgment.

[31] *Martin*, 469 Mich at 542-543.

[32] *Id*. at 551 n 24.

[33] *Tomecek*, 482 Mich at 496 (opinion by KELLY, J.).

10

title action was the appropriate action to establish their entitlement to hold record title to the property at issue. Because plaintiffs' quiet title action established a substantive property right that was not reflected in the plat or traceable to the platting process, their action involved more than merely correcting the plat to reflect a preexisting interest in land. Plaintiffs' claim to the property developed more than a century ago; however, public recognition of that right depended on plaintiffs' ability to prove the elements of adverse possession in a present-day quiet title action.

The township's challenge to plaintiffs' claim required the circuit court to resolve the merits of plaintiffs' adverse possession claim *before* considering any claims regarding the plat's accuracy. If plaintiffs had failed to *prove* adverse possession by clear and cogent evidence, the township's interest in the land would have been paramount and the plat would have remained accurate. Revising a plat ensures that the plat accurately reflects existing substantive property rights; a revision does not, however, establish rights that did not exist previously.[34] Rather, when a claimant challenges title to land through adverse possession, substantive property rights are established through a quiet title action.[35] Therefore, plaintiffs could not have obtained the relief they sought by merely filing a claim under the LDA.[36]

---

[34] See *id.*

[35] See MCL 600.2932.

[36] As early as 1937, this Court acknowledged the distinction between obtaining title by adverse possession and vacating a plat. See *Olsen v Grand Beach*, 282 Mich 364, 368-369; 276 NW 481 (1937).

11

Our conclusion finds support in the plain language of the LDA. The LDA defines a plat as a "map or chart of a subdivision of land."[37] This Court has also described plats as "a description of the physical property *interests* on a particular area of land."[38] When a party files an LDA action to vacate, correct, or revise a recorded plat, MCL 560.223(b) requires the plaintiff to set forth the "reasons for seeking the vacation, correction, or revision of the plat." However, without a judicial decree showing that plaintiffs validly obtained record title to the property, there is no legal or record basis for plaintiffs to seek a vacation, correction, or revision of the plat. Thus, the plat *accurately* reflected the underlying substantive property rights until the change in ownership rights was established by plaintiffs' adverse possession action.[39]

---

[37] MCL 560.102(a).

[38] *Tomecek*, 482 Mich at 496 (opinion by KELLY, J.) (emphasis added).

[39] As additional support for this analysis, we note that the LDA affords standing to file a complaint "to vacate, correct, or revise a recorded plat or any part of a recorded plat" *only* to "the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located." MCL 560.222. If we were to hold, as the dissent argues, that an adverse possessor is required to file under the LDA, the adverse possessor may not have standing to pursue the very LDA action that the dissent would require. If a party acquired land in a plat by adverse possession but did not become an "owner of a lot in the subdivision," the party could not file an LDA action under MCL 560.222. Therefore, if, as the dissent argues, an LDA action were a prerequisite to establishing an adverse possession claim, a person who was not already a lot owner would be left without recourse to acquire record title by adverse possession. Such a holding would work a fundamental change in property law by effectively precluding an entire class of litigants from establishing record and marketable title through adverse possession. Nothing in the LDA indicates that the Legislature intended this result.

12

Our conclusion is also supported by this Court's caselaw addressing the LDA. We previously discussed the scope of LDA actions in *Martin v Beldean* and *Tomecek v Bavas*. In *Martin*, the plaintiffs were landowners in a recorded plat consisting of 21 lots and three outlots who filed a quiet title action to have a provision of the plat language regarding an outlot declared "null and void."[40] The plaintiffs owned a lot in the plat that bordered the outlot in question and also had an ownership interest in the outlot itself. The plaintiffs argued that the restriction regarding use of the outlot had expired and claimed that they were entitled to have the plat language removed. The Court of Appeals agreed.[41]

We reversed and held that the plaintiffs' efforts to have a plat dedication of an outlot declared "null and void" required the filing of an LDA action.[42] This was because the *Martin* plaintiffs' requested order sought relief that only the LDA could afford.[43] The plaintiffs had improperly filed a quiet title action because the removal of plat language constituted an action to vacate, correct, or revise the plat and a lawsuit under the LDA is "the exclusive means available" for a party to vacate, correct, or revise a recorded plat.[44]

---

[40] *Martin*, 469 Mich at 544-545.

[41] *Martin v Redmond*, 248 Mich App 59; 638 NW2d 142 (2001).

[42] *Martin*, 469 Mich at 550.

[43] The *Martin* plaintiffs expressly requested that the court "'remov[e] the . . . restrictions/reservations from the subject portion of Outlot A owned by the Plaintiffs and/or declaring same null and void.'" *Id.* at 545 n 10.

[44] *Id*. at 542-543.

The dissent incorrectly concludes that *Martin* requires plaintiffs in the instant case to file under the LDA. *Martin* presents the very opposite situation from the one this case presents. Unlike plaintiffs here, the *Martin* plaintiffs had a *preexisting* substantive property right—reflected in the plat and documented by a deed—in the plat whose language they sought to have declared void. Thus, the issue in *Martin* concerned whether the plat's language accurately reflected the parties' preexisting rights *as outlined* in the plat itself. Furthermore, the relief sought by the *Martin* plaintiffs' quiet title action was to conform the plat at issue to those preexisting property rights. In this case, plaintiffs had no recognized, recorded, preexisting property rights in the disputed land. Plaintiffs' sole claim to the land required *establishing* legally cognizable substantive property rights that were not recognized within the plat, which plaintiffs could *only* accomplish by proving, for the first time in more than 100 years, that they and their predecessors in interest had satisfied the elements of adverse possession. Finally, unlike the action in *Martin*, plaintiffs' successful quiet title action leaves the plat unchanged, but inaccurate. However, *because* plaintiffs have now successfully established their rights to the property, they have a basis on which to request that the plat be corrected.[45]

---

[45] Our decision is also consistent with *Hall v Hanson*, 255 Mich App 271; 664 NW2d 796 (2003), which we cited with approval in *Martin*. *Martin*, 469 Mich at 550 n 21. In *Hall*, the defendants filed a counterclaim to quiet title, alleging that the relevant plats "were clouds on their title." *Hall*, 255 Mich App at 277. The *Hall* defendants challenged the validity of a street dedicated in a plat and claimed that the plaintiffs had failed to accept the dedication or, in the alternative, abandoned the street. The defendants in *Hall* did not claim an interest in the street by virtue of adverse possession or on any other basis independent of the plat. Rather, the defendants' claimed interest in the street at issue was directly traceable to and arose from the plat and the platting process. If the street were

In *Tomecek*, we considered a dispute over the meaning of a restrictive covenant running with a plat, which prevented the plaintiffs from erecting a building on their lot until that lot had access to a municipal sanitary sewer line.[46]  Because the lot at issue was landlocked, the plaintiffs had an easement over two other lots through which they accessed their property, but upon which no utilities were located.  The plaintiffs argued that they were entitled to use their easement to access the municipal sewer line.[47]  A second easement existed on the plat where plaintiffs' lot was located, and both easements were labeled "drive easement" on the plat.  At the time of platting, the second easement was used as a right of way and had utilities located on it as well.  Four justices concluded that the original grantor intended both easements to be used for right-of-way access and for utility access.[48]  Thus, the plaintiffs were permitted to access utilities through their easement.

---

vacated—that is, if a court determined that the plaintiffs had failed to accept the dedication or abandoned the street—the defendants would, by operation of law, own the vacated portions of the street because, *as reflected in the plat*, they were abutting landowners.  See MCL 560.227a.  Unlike plaintiffs here, the *Hall* defendants claimed a property interest that arose from the plat.  Thus, the defendants' interest in the relevant property emanated from the plat and the platting process, and the defendants were required to proceed under the LDA because their claim addressed the scope of property interests as reflected in the plat.  The *Hall* defendants, in short, were not establishing a substantive right that was not depicted in the plat, whereas, in this case, plaintiffs' claim *did* establish a substantive right that was established *without* regard to the plat.

[46] *Tomecek*, 482 Mich at 487-489 (opinion by KELLY, J.).

[47] *Id*. at 487-488.

[48] *Id.* at 487; *id*. at 499 (opinion by CAVANAGH, J.).

*Tomecek* also addressed whether the LDA permitted a court to affect underlying substantive property rights by vacating, correcting, or revising a recorded plat. Five justices concluded that "[t]he LDA cannot be used to create substantive property rights"[49] and set forth the following principles regarding the parameters of an action under the LDA:

> The LDA defines a plat as a map. A plat is a description of the physical property interests on a particular area of land. A map, by itself, is not a determination of substantive property interests. If one "revises" a map of the United States to show Michigan encompassing half of the country, it does not make it so. The LDA was never intended to enable a court to establish an otherwise nonexistent property right. Rather, the act allows a court to alter a plat to reflect property rights *already in existence*.[50]

Thus, the LDA cannot establish substantive property rights by redrawing the lines in a plat because the plat, as a map, merely reflects preexisting substantive property rights.

The lead opinion in *Tomecek* also concluded that, when the trial court altered the plat at issue, the plaintiffs' LDA action did not "create" a property right:

> In this case, the LDA did not *create* new substantive property rights when the circuit court altered the plat to reflect that the central easement encompasses utility access. This right existed with respect to the central easement *since its inception*, when the original grantors recorded the central

---

[49] *Id*. at 497 (opinion by KELLY, J.); *id*. at 505 (opinion by YOUNG, J.).

[50] *Id*. at 496 (opinion by KELLY, J.) (emphasis added); accord *id.* at 505 (opinion by YOUNG, J.). It is not clear how the dissent reconciles its position with *Tomecek*, which compels the conclusion that plaintiffs' quiet title action was appropriate. In this case, without first quieting title, plaintiffs' LDA action would have involved the establishment of a substantive right, which, as five justices held in *Tomecek*, is relief that the LDA cannot provide.

16

easement intending it to include utilities.  The trial court merely used the LDA as the tool to validate property rights that already existed.[51]

Because the right to use the easement in question for utility access existed *at the time of platting*, the LDA did not *create* a property right.  Thus, the issue in *Tomecek* concerned the scope of the easement rights that existed *in the plat*.  By contrast, in this case, plaintiffs' legal entitlement to the property existed independently of the plat.

Contrary to the dissent's arguments, our analysis does not draw "hypertechnical distinctions" between this case and our precedents analyzing the LDA.[52]  Rather, our analysis simply recognizes the limitations of the LDA and the common thread that runs through *Hall*, *Martin*, and *Tomecek*.[53]  In those cases, the disputes centered on whether a plat accurately reflected existing substantive property rights as determined by the relevant

[51] *Id*. at 496 (opinion by KELLY, J.) (emphasis added).

[52] *Post* at 28.

[53] Contrary to the dissent's assertions, our decision does not suggest that *Martin* was decided incorrectly.  As stated throughout this opinion, the factual and legal differences that distinguish the instant matter from *Martin* compel the result of this case.  Moreover, the dissent's repeated efforts to transform plaintiffs' quiet title claim into an LDA action to revise a plat erroneously conflates two distinct legal actions.  Yet, notwithstanding the attempt to mesh these different claims such that we should require plaintiffs to proceed under the LDA, the dissent agrees that plaintiffs could not file an LDA action without first establishing a substantive interest in the land: "If the plat had been simply altered without a judicial decree that plaintiffs were the true owners of the property, the LDA would have served as the vehicle to '*establish* an otherwise nonexistent property right,' which would be contrary to our holding in *Tomecek* . . . ." *Post* at 25.

The quiet title action at issue serves precisely that (limited) purpose: to obtain the necessary judicial decree.  Unless and until plaintiffs affirmatively demonstrate their superior interest in the land, the LDA is inapplicable.  The dissent errs by treating plaintiffs' lawsuit, which did not seek and could not have obtained a plat revision without first succeeding in this claim, as an action that must be filed under the LDA.

17

plat language. In this case, the dispute concerns the establishment of a substantive right neither reflected in the plat nor traceable to the platting process. The LDA's language, coupled with the applications of the LDA set forth earlier, highlights the crucial limitation of LDA actions to vacate, correct, or revise a recorded plat. If a party's interest in land is traceable to the plat or the platting process, the LDA is the appropriate avenue for relief. If, as here, a party seeks to establish a substantive interest in land that is not traceable to the plat nor the platting process, the LDA cannot provide the necessary relief.

Additionally, plaintiffs' quiet title action did not seek to have the plat language regarding North, East, and Cross Streets declared "null and void," nor does it "vacate, correct, or revise" the plat. Rather, plaintiffs' quiet title action served a very different purpose from the purpose served by an LDA action.[54] Unlike the factual situations in *Hall*, *Martin*, and *Tomecek*, plaintiffs' interest in the disputed property did not depend on

---

[54] The dissent argues that plaintiffs' quiet title action "for all practical purposes sought to vacate or otherwise alter the plat . . . ." *Post* at 19-20. However, in actuality, plaintiffs' quiet title action served the entirely *separate* purposes of establishing a cognizable substantive property right in land and obtaining record ownership of the property. The inescapable conclusion of plaintiffs' action—and the gravamen of plaintiffs' claim—is that plaintiffs sought to establish an otherwise unrecognized substantive interest in land. As this Court recognized in *Tomecek*, the LDA is incapable of providing the relief plaintiffs requested. Moreover, as outlined earlier and conceded by the dissent, plaintiffs' action was a necessary prerequisite to an LDA action. We agree with the dissent that the essential issue is "whether plaintiffs' quiet-title action seeks to 'vacate, correct, or revise a recorded plat or any part of a recorded plat.'" *Post* at 33-34. However, because we believe that plaintiffs' quiet title action did not seek such relief—either in form or in substance—we do not require plaintiffs to proceed under the LDA.

18

the plat, the plat's dedication language, or whether the township abandoned the streets.[55] Plaintiffs acquired their interest in the land by adverse possession, the very nature of which requires acting in a manner *contrary* to another person's interests, including interests that are reflected in a plat. Plaintiffs' quiet title action required plaintiffs to affirmatively establish their entitlement to the disputed land and, thus, merely revising the plat could not provide plaintiffs the necessary relief.

We agree with the township that the Legislature has expressed an intent that a plat may only be properly altered, in whole or in part, by following the procedures set forth in the LDA. We are not persuaded, however, by the township's argument that because the consequence of plaintiffs' successful quiet title action altered substantive rights created by the dedication of land in a recorded plat, they were required to bring their action under the LDA *in the first instance*. This position is inconsistent with the holding in *Tomecek*.[56]

---

[55] The dedication provision of MCL 560.253(1) does not change our analysis. The plain language of § 253 addresses itself to the conveyance of substantive property rights by a landowner when the plat is initially created and how those rights are reflected in a plat. When a landowner certifies, signs, acknowledges, and records a plat pursuant to the LDA, that process is "deemed" sufficient to convey property interests to the donees represented in the plat. The LDA indicates that the *only* time at which a plat establishes substantive rights is when a plat is *created* in conformity with the LDA's requirements. Thus, although a property owner may convey substantive rights by creating a plat because the LDA "deem[s]" it so, the plat that results from this process merely *reflects* those conveyed rights because a plat, as defined by the LDA, is a "map or chart of a subdivision of land." MCL 560.102(a). Section 253 does not undermine our conclusion that plaintiffs' quiet title action was appropriate because plaintiffs established a substantive interest in the disputed property that was neither represented in the plat nor traceable to the platting process.

[56] *Tomecek*, 482 Mich at 496 (opinion by KELLY, J.).

19

If the rights indicated in the plat were superior to the underlying substantive property rights indicated in the register of deeds, the township would be correct. However, we see nothing to suggest that the LDA elevates the plat description above the underlying substantive property rights contained therein. Thus, the LDA does not require a party to proceed under its procedures unless that party is seeking to alter the plat or the dedication language of the plat to which the party has a preexisting substantive property right as the owner of the property or a person of record claiming under the owner.[57]

Furthermore, we reject the claim that plaintiffs' action to quiet title by adverse possession is merely a disguised action to alter a plat and the assertion that our decision encourages artful pleading or gamesmanship. Plaintiffs in this case merely pleaded what they sought to accomplish, which was to establish a substantive interest in property on

---

[57] The dissent's effort to harmonize the quiet title statute with the LDA highlights the basic disagreement between the two opinions. The dissent argues that plaintiffs' quiet title action overlaps with and must yield to the LDA and accuses the majority of "view[ing] it as of little moment whether a plaintiff avails himself of the quiet-title statute or the LDA[.]" *Post* at 21. On the contrary, we find the distinction of considerable moment, and our analysis recognizes the separate purposes served by quiet title actions and actions under the LDA, as well as the limitations of each. Quiet title actions enable a party to establish a substantive right. LDA actions, on the other hand, are concerned with whether a map accurately reflects the substantive rights described therein and do not authorize a court to establish an otherwise nonexistent right. *Tomecek*, 482 Mich at 496 (opinion by KELLY, J.). Had plaintiffs merely filed an LDA action grounded on the bare assertion that the plat was inaccurate because of an unproven claim of adverse possession, plaintiffs would not have been entitled to relief because the LDA could not have provided the requested substantive relief. Thus, the distinction between the two claims is of substantial importance, and it is unnecessary for quiet title actions to yield to the LDA when the LDA plainly cannot provide the same relief. Therefore, because each claim serves a separate purpose—as demonstrated previously—there is no tension between the statutes and no need to harmonize them.

20

the basis of adverse possession. Although we see no reason why plaintiffs could not have addressed both the adverse possession claim and the LDA claim in bifurcated proceedings—in which the court would have first addressed the quiet title claim and then, if necessary, resolved any issues regarding the plat—there is nothing in the LDA that *requires* a litigant to proceed in that manner. The action to quiet title was a necessary prerequisite, permitting plaintiffs to obtain the marketable title of record that is essential to supporting a subsequent claim for altering the plat under the LDA.[58] Thus, a meaningful and necessary distinction exists between establishing marketable title of record by adverse possession and having that property interest accurately reflected in the plat.[59]

Finally, we hold that the circuit court erred when it ordered the unrequested relief that, "[t]o the extent that it is necessary[,] the Harford Plat shall be corrected to remove Cross, North, and East Street and vest[] title in favor of the plaintiffs." Because the LDA provides the *exclusive* means to vacate, correct, or revise a plat,[60] and plaintiffs did not

---

[58] That a quiet title action to establish title to land is a "necessary prerequisite to the alteration of [a] plat" is a proposition with which the dissent agrees. *Post* at 25. The dissent errs by conflating the plat alteration with the action to quiet title despite recognizing that a party must establish title—accomplished here through a quiet title action—*before* any alteration to a plat becomes necessary.

[59] See *Olsen*, 282 Mich at 368-369 (recognizing the distinction between claiming title by adverse possession and vacating a plat); *Howard v Berrien Springs*, 311 Mich 567, 568, 570; 19 NW2d 101 (1945) (recognizing the plaintiff's right to quiet title based on adverse possession "as to any claim of defendant village in the premises," which included land in a recorded plat dedicated "'to remain open and free for the benefit of the public'").

[60] *Martin*, 469 Mich at 542-543.

proceed under the LDA, the circuit court lacked the authority to order a correction of the plat. Although plaintiffs *now* have a basis on which to seek a revision of the plat, the circuit court was without jurisdiction to order the correction of the plat at the time plaintiffs sought to quiet title to the property. Therefore, we order the circuit court to strike that portion of its order.[61]

## IV. CONCLUSION

We conclude that plaintiffs were not required to file their action under the LDA. Although plaintiffs could have filed an action under the LDA contingent on establishing their substantive right in a quiet title action, they were not required to do so because they did not expressly request the alteration of the plat and because plaintiffs' quiet title action established a substantive property right for the first time. Accordingly, we affirm the judgment of the Court of Appeals that plaintiffs were not required to bring their action under the LDA on the basis of the preceding analysis and remand the matter for the circuit court to strike the erroneous portion of its order instructing that the plat be revised.

Robert P. Young, Jr.
Marilyn Kelly
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

---

[61] We recognize that the practical effect of our analysis is to render the plat inaccurate. But the township is not without recourse to correct the plat because it has standing under the LDA, as the municipality in which the subdivision covered by the plat is located, to seek to correct the plat. MCL 560.222. Although the township is not required to file such an action, it may certainly do so if it desires to rectify the inaccuracy of the plat by having it altered to indicate that plaintiffs have record title to the disputed property. Plaintiffs, as lot owners, may do the same. *Id*.

22

STATE OF MICHIGAN

SUPREME COURT

FLORENCE BEACH, CYNTHIA B.
GUTHRIE, DONALD E. JAEKLE, JR., as
Trustee of the ANN B. JAEKLE
REVOCABLE TRUST, LILLIAN B.
MUMAW, and DWIGHT E. BEACH, JR.,

          Plaintiffs/Counterdefendants/
          Appellees,

v                                     No. 139394

TOWNSHIP of LIMA,

          Defendant/Counterplaintiff/
          Appellant,

and

JEFFREY V. MUNGER,

          Defendant.

MARKMAN, J. (*dissenting*).

I respectfully dissent. The exclusive way to "vacate, correct, or revise a recorded plat or any part of a recorded plat" is to file a lawsuit pursuant to the procedures of the Land Division Act (LDA), MCL 560.101 *et seq*. MCL 560.222; *Martin v Beldean*, 469 Mich 541, 542-543; 677 NW2d 312 (2004). This rule is compelled by the explicit language of the LDA, and was explicitly recognized in *Martin*. Even the majority appears to acknowledge this rule. Yet, disregarding the core purpose of the LDA-- to "ensure[] that plats on file remain accurate," *Martin*, 469 Mich at 551 n 24-- the majority

holds that plaintiffs, who filed an action to quiet title based on adverse possession, were not required to proceed with an action under the LDA because they sought to establish a substantive property right that was neither "traceable to the plat" nor to "the platting process," even though now that plaintiffs have prevailed in this action, a recorded plat will *necessarily* have been "vacated, corrected, or revised." By undermining the protections established by the LDA for persons who purchase property in reliance on the representations made in a plat, the majority introduces uncertainty and instability into Michigan property law. Under the majority's interpretation, Michigan plats are destined, over time, to become certainly, and increasingly, more inaccurate, defeating the fundamental purpose of the act. I would require that plaintiffs proceed with their action under the LDA, but allow them to amend their complaint and add all necessary parties.

## I. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition presents an issue of law that is reviewed de novo on appeal. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010). The interpretation of statutes also constitutes a question of law that this Court reviews de novo on appeal. *Eggleston v Bio-Med Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

## II. ANALYSIS

### A. BACKGROUND

The purpose of the LDA, as suggested by its title, is "to regulate the division of land" and also to "further the orderly layout and use of land," "provide for proper ingress and egress to lots and parcels," "promote proper surveying and monumenting of land subdivided and conveyed by accurate legal descriptions," and "establish the procedure for

2

vacating, correcting, and revising plats." Title of 1967 PA 288. In pursuit of these objectives, real property information is compiled on a plat that is recorded with the local municipality. See MCL 560.131 to 560.198. A plat consists of "a map or chart of a subdivision of land," MCL 560.102(a), and the LDA requires that the plat

> contain sufficient information to completely define, for the purpose of a resurvey, the location of any boundary, corner or angle point within the plat. All land lying within the boundaries of the plat shall be shown thereon in such a manner that title to the area may be clearly established as to whether dedicated to public use or reserved to private use. [MCL 560.135.]

A plat in Michigan is more than a mere map. Rather, it communicates the existence of property rights that are derived from the plat itself. In *Kirchen v Remenga*, 291 Mich 94, 109; 288 NW 344 (1939), this Court explained:

> "Where land is represented on a map or plat as a park, public square, or common, the purchasers of adjoining lots acquire as appurtenant thereto a vested right to have the space so designated kept open for the purpose and to the full extent which the designation imports. The sale and conveyance of lots according to such plat implies a covenant that the land so designated shall never be appropriated by the owner or his successors in interest to any use inconsistent with that represented on the original map. And the purchaser of an adjoining lot acquires such an easement in the park or public square in front of it as entitles him to proceed in equity to prevent by injunction the appropriation of the park or square to any use other than that designated on the map or plat by reference to which he purchased his lot; he is not a mere volunteer seeking to enforce the rights of the public; he has a special interest of his own to protect." [Citation omitted.]

Likewise, in *Little v Hirschman*, 469 Mich 553, 564; 677 NW2d 319 (2004), a unanimous opinion of this Court, we held that it is well established by our caselaw that "dedications of land for private use in plats before [the LDA] took effect convey at least an irrevocable easement in the dedicated land." Indeed, "a private dedication is effective

3

upon the sale of a lot because it is reasonably assumed that the value of that lot, as enhanced by the dedication, is reflected in the sale price. That is, purchasers [have] relied upon the dedications that made the property more desirable." *Id.* at 559.

In addition to our caselaw interpreting rights derivable from the plat, the Legislature has granted property rights to individuals solely on the basis of the plat. MCL 560.253(1) states that

> [w]hen a plat is certified, signed, acknowledged and recorded as prescribed in this act, every dedication, gift or grant to the public or any person, society or corporation marked or noted as such on the plat shall be deemed sufficient conveyance to vest the fee simple of all parcels of land so marked and noted, and shall be considered a general warranty against the donors, their heirs and assigns to the donees for their use for the purposes therein expressed and no other.

Therefore, under this provision of the LDA, if a plat is duly recorded, a property right is effectively created. That property right consists of a fee simple interest in "every dedication, gift or grant . . . marked or noted as such on the plat," to be used for "the purposes expressed therein and no other." *Id*.; see also *Martin*, 469 Mich at 549 n 19 (recognizing the fact that "purchasers of parcels of property conveyed with reference to a recorded plat have the right to rely on the plat reference and are presumed to 'accept' the benefits and any liabilities that may be associated with the private dedication"). Thus, as our caselaw and statutes make plain, a plat is more than merely a map because it conveys property rights to the purchasers of platted property. With this background, we examine whether plaintiffs, who ultimately seek to have North, East, and Cross Streets struck from the Harford Village plat, should have been required to file their claim pursuant to the procedures of the LDA.

4

## B. LAND DIVISION ACT

The primary goal of statutory interpretation is "to ascertain the legislative intent that may be reasonably inferred from the words expressed in the statute." *G C Timmis & Co v Guardian Alarm Co*, 468 Mich 416, 420; 662 NW2d 710 (2003). If statutory language is clear, we presume that the Legislature intended the meaning expressed. *Id.* If the statute does not define a word, we may consult a dictionary to determine the plain and ordinary meaning of the word. *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999).

MCL 560.222 provides:

> Except as provided in [MCL 560.222a], to *vacate, correct, or revise a recorded plat or any part of a recorded plat*, a complaint shall be filed in the circuit court by the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located. [Emphasis added.]

As recognized in *Martin*, the LDA provides the "exclusive" procedure "to vacate, correct, or revise" a recorded plat or any part of a recorded plat. *Martin*, 469 Mich at 542-543. The LDA does not define the terms "to vacate," "to correct," or "to revise." Therefore, we may consult a dictionary to determine the plain and ordinary meaning of these terms. "To vacate" means "to render inoperative"; "to correct" means "to set or make right; remove the errors or faults from"; and "to revise" means "to alter (something written or printed), in order to correct, improve, or update[.]" *Random House Webster's College*

5

*Dictionary* (1997). These definitions make evident that plaintiffs' cause of action in this case seeks to "vacate," "correct," and "revise" part of the Harford Village plat.[1]

First, plaintiffs sought to "vacate" part of the plat because they desired "to render inoperative" the areas platted as North, East, and Cross Streets. Pursuant to its property rights derived from the dedication in the plat, Lima Township claims that it is entitled to use these streets. According to the township, a successful adverse-possession action by plaintiffs would render the township's use rights under the plat inoperative, and it is obviously correct in this assertion. Through the operation of adverse possession, plaintiffs are attempting to extinguish all other interests in the property, including any easement interest of the township. That is, a successful adverse-possession claim would vest plaintiffs with title to the disputed property, *Gorte v Dep't of Transp*, 202 Mich App 161, 168; 507 NW2d 797 (1993), and would afford them "'the right to defend the possession, and to protect the property against the trespass of others,'" *Zabowski v Loerch*, 255 Mich 125, 128; 237 NW 386 (1931) (citation omitted). The majority

_____

[1] MCL 560.222 provides that an LDA action is appropriate if the action seeks to "vacate, correct, or revise" a recorded plat. But rather than analyzing plaintiffs' action in regard to these words that the Legislature actually used, the majority prefers to analyze plaintiffs' action in terms of whether their property interest is "traceable to the plat or the platting process," which according to the majority constitutes a "crucial limitation" on actions that seek to "vacate, correct, or revise" a plat. *Ante* at 18. However, it is unclear where this newly identified "crucial limitation" comes from, given that neither the LDA nor caselaw sets forth any such "limitation" on actions that seek to "vacate, correct, or revise" a plat. See MCL 560.221 through 550.229 and part IV(B) of this opinion (observing that the plaintiffs in *Martin* lacked any interest that was "traceable to the plat or the platting process," and thus failed to satisfy the majority's new "crucial limitation" on LDA actions). By introducing a new generalization into the law, one having no apparent foundation within the actual law itself, the majority subtly but unmistakably transforms the law.

6

recognizes this fact and states that "the judicial decree quieting title in plaintiffs settled *any* ownership claims of the township . . . ." *Ante* at 8 (emphasis added). Thus, when the trial court quieted title to the disputed streets in plaintiffs, they acquired a right to defend their possession and to protect the property against the trespass of the township and all others. Plaintiffs thereafter had a fee simple interest in the platted streets, unencumbered by any remaining interest of the township. By quieting title in plaintiffs, the "part of the plat" that granted the township an easement in the depicted streets was rendered null and void, and therefore "vacated."

Second, plaintiffs sought "to correct" the plat because they desired "to set or make right" the plat to conform to the actual use of the platted streets. Plaintiffs' quiet-title action sought judicial recognition that they are the exclusive owners of the disputed streets and that their ownership interest is unencumbered by the township's easement. A declaration of exclusive ownership thus "correct[ed]" the township's claimed interest in the plat.

Third, plaintiffs sought to "revise" the plat because they desired "to alter [the plat] in order to correct, improve, or update" it to reflect the nonexistence of the township's easement in the platted streets.[2] The majority again agrees that the plat has been altered,

_____

[2] Notwithstanding the foregoing, the majority concludes that plaintiffs' quiet-title action does not seek to "vacate, correct, or revise" the plat because their action merely sought a judicial determination of title, and not alteration of the plat. But this is an incomplete analysis. What plaintiffs, in fact, sought in addition to a judicial declaration of title was that the title be free and clear of any interests that the township had in the property. Thus, when title was granted in this action, and the township's easement extinguished, the property interests underlying the plat, which granted the township an easement, were ineluctably altered. A plat that did not reflect this alteration would be inaccurate.

7

and therefore "revise[d]," when it asserts that a "consequence of plaintiffs' successful quiet title action [was to] alter[] substantive rights created by the dedication of land in a recorded plat . . . ." *Ante* at 19. Accordingly, because plaintiffs' quiet-title action sought to "vacate, correct, or revise" the Harford Village plat (indeed to do all three), plaintiffs should have been required to file their claim pursuant to the LDA. Once again, the LDA provides the *exclusive* procedure "to vacate, correct, or revise a dedication in a recorded plat." *Martin*, 469 Mich at 542-543.[3]

## C. LDA AND ACCURACY OF PLATS

This interpretation is consistent with the underlying purposes of, and protections afforded by, the LDA. Specifically, the LDA requires a plaintiff seeking to "vacate, correct, or revise a recorded plat or any part of a recorded plat," MCL 560.222, to (a) set forth the "part or parts, if any sought to be vacated and any other correction or revision of

---

[3] Although the instant quiet-title action should have been brought pursuant to the LDA, that is not to say that *every* action that seeks to quiet title to property through adverse possession must proceed under the LDA. As we stated in *Martin*,

> if a party merely wants to maintain the status quo, e.g., to be declared an owner or someone with use rights under a plat, such party would not be seeking to vacate, correct, or revise the plat and thus would not be limited to filing a lawsuit pursuant to the LDA. [*Martin*, 469 Mich at 550 n 21.]

Thus, if an adverse possessor merely sought in an adverse-possession action to be substituted for an owner of a parcel of platted property without affecting the plat's boundary lines, which are to be shown on the plat "in such a manner that title to the area may be clearly established," MCL 560.135, that party would not be required to comply with the procedures of the LDA because it would be maintaining the "status quo" of the plat. It would not be "vacating, correcting, or revising" the plat. If, on the other hand, as here, the adverse possessor sought to alter the boundary lines of platted property, that party would be required to comply with the procedures of the LDA because that action would alter the "status quo" of the plat.

8

the plat sought" and "[t]he plaintiff's reasons for seeking the vacation, correction, or revision," MCL 560.223; (b) serve with process an extensive group of parties who have a potential interest in the platted property, MCL 560.224a; and (c) if the plaintiff's action is successful, prepare "either a new plat of the part of the subdivision affected by the judgment or a new plat of the entire subdivision if the court's judgment affects a major part of the subdivision," MCL 560.229(1). These procedures ensure that every party with an interest or right in the platted property is brought before the court.[4] As this Court stated in *Martin*:

> Allowing this action to proceed as one to quiet title is contrary to the statutes, which not only outline the specific procedures to be followed and what must be pleaded, but also require that an extensive group of parties be served, including everyone owning property located within three hundred feet of the lands described in the petition, the municipality, the State Treasurer, the drain commissioner, the county road commissioners, affected public utilities, and in certain instances, the directors of the Department of Transportation and the Department of Natural Resources. [*Martin*, 469 Mich at 550-551.]

The Court further stated:

> Requiring lawsuits seeking to correct, alter, or amend a plat to be filed only pursuant to MCL 560.221 through 560.229 ensures that plats on file remain accurate. The reason is that MCL 560.229 requires that a plaintiff who obtains a court order to vacate, correct, or amend a plat must obtain a new plat and have it filed with the State Treasurer. In this way, the plats on file remain accurate. [*Id.* at 551 n 24.]

---

[4] Amicus curiae, the Department of Energy, Labor and Economic Growth (now the Department of Licensing and Regulatory Affairs), for example, observes, that it is statutorily obligated as the successor of the State Treasurer to review plats to ensure that the requirements of the LDA are satisfied. MCL 560.151. Requiring that it be joined in an action that seeks to "vacate, correct, or revise a recorded plat" enables it to perform these statutory obligations.

9

*Martin* thus recognized that purchasers of property have a right to rely on a plat as an *accurate* reflection of the property rights received through their purchase. Ensuring that plats on file remain accurate protects those purchasers who have rightfully relied on plats as evidence of property rights received through their purchase.[5] The rule adopted today by the majority contravenes this core purpose of the LDA by permitting, indeed incentivizing, the increasing inaccuracy of recorded plats. The majority agrees that a principal rationale for requiring a lawsuit under the LDA that seeks to "vacate, correct, or revise a recorded plat" is to ensure that plats remain accurate. Yet, at the same time, it recognizes that "the practical effect of [its] analysis is to render the plat inaccurate." *Ante* at 22 n 61; see also *ante* at 12 (stating that "the plat accurately reflected the underlying substantive property rights *until the change* in ownership rights was established by plaintiffs' adverse possession action") (emphasis altered). How can the majority's rule reflect the better interpretation of the LDA where, as the majority itself recognizes, its rule undermines the central purpose of the act? How can its rule reflect a consistent interpretation of the LDA where, as the majority further recognizes, its rule contradicts *Martin*, in which we stated unanimously that "[r]equiring lawsuits seeking to correct, alter, or amend a plat to be filed only pursuant to [the LDA] ensures that plats on file remain accurate"? *Martin*, 469 Mich at 551 n 24. And how can the majority's rule reflect a reasonable interpretation of the LDA and fundamental Michigan property law

---

[5] Moreover, as three amici curiae (the Michigan Municipal League, the Michigan Township Association, and the State Bar's Public Corporation Law Section) point out, purchasers of platted property are hardly the only ones who rely on the accuracy of plats. Local governments, in particular, also rely on plats for zoning, infrastructure, utility placement, liability, and property taxation purposes.

where, as the majority again recognizes, its rule will ensure, over time, that recorded plats become certainly and increasingly inaccurate?

The majority reasons that all this is acceptable because the LDA grants *other* persons, such as the township, the right to file a complaint to correct erroneous plats. However, the fact that the Legislature may have afforded other persons standing to file a claim to "vacate, correct, or revise" a plat does not ensure that such persons will see fit to actually file such a claim. Plats will indeed remain accurate if they *do* choose to file, but will become increasingly inaccurate if they do *not*, or if they file in a dilatory manner. This legal regime stands in contrast to that established by the LDA, under which plats will always remain accurate, without relying on the fortuitousness of what "other" persons do.[6] Requiring plaintiffs to file their claim pursuant to the LDA ensures that the plat remains accurate because the Legislature has also mandated that if a plaintiff succeeds in such an action, "the court shall also direct plaintiff to prepare . . . a new plat . . . ." MCL 560.229. In this way, the "plats on file remain accurate." *Martin*, 469

---

[6] The Legislature actively sought to ensure that plats on file remain, and become increasingly more, accurate over time by amending MCL 560.222 to require parties seeking to "vacate, correct, or revise a plat or any part of a recorded plat" to file their claim pursuant to the LDA. As originally enacted, MCL 560.222 was permissive in nature and stated that to "vacate, correct, alter or revise a recorded plat or any part of it. . . . [a party] *may* apply to the appropriate circuit court." See 1967 PA 288, § 222(2) (emphasis added). However, in 1978, § 222 was amended to mandate that a party seeking to "vacate, correct, or revise a recorded plat or any part of a recorded plat" "*shall*" file a complaint in the circuit court. MCL 560.222, as amended by 1978 PA 367 (emphasis added). This mandatory directive remains in the current version of MCL 560.222.

Mich at 551 n 24. The fact that "other" persons may have standing to file, based on their *private* interests, is not the equivalent of persons being required to comply with a law designed to ensure that a particular *public* interest is upheld-- namely, a public interest in accurate recorded plats.

The majority's decision effectively allows private litigants to alter plats, with no assurance that any of the persons who must be informed of this under the LDA will be apprised of such changes in the plat, be made aware of possibly antagonistic property interests, or be enabled to assert and defend their property rights. Allowing plaintiffs to dispense with the procedures of the LDA, including notice to the municipality and other governmental entities, also undermines the ability of local governments to rely on plats for these same purposes.

## D. CASELAW

Requiring plaintiffs to file their quiet-title action pursuant to the LDA would be consistent with the guidance of *Martin*, and with *Hall v Hanson*, 255 Mich App 271; 664 NW2d 796 (2003), a case that is on all fours. In *Martin*, the plaintiffs purchased a parcel of property that was one of 21 platted parcels in the Tan Lake Shores Subdivision plat. The plaintiffs also purchased the northerly part of an adjoining outlot referred to as outlot A. When the plaintiffs applied for a permit to build a home on their parcel and a portion of outlot A, they learned that the plat had dedicated outlot A for the use of all lot owners in the subdivision. The plaintiffs filed a quiet-title action to have the plat language "'[o]utlot A is reserved for the use of the lot owners'" declared null and void. *Martin*, 469 Mich at 544-545. The trial court granted the plaintiffs the requested relief in an order stating that the plaintiffs "shall hereinafter have the exclusive right and use of the portion

12

of Outlot A . . . ." *Id.* at 545 n 11. This Court reversed. First, we held that the LDA clearly authorizes private dedications and that the dedication in the Tan Lake Shores Subdivision plat that outlot A "'is reserved for the use of lot owners'" constituted a private dedication that conveyed a fee simple to the purchasers of lots in the plat. *Id.* at 549 (citation omitted). Second, we held that the plaintiffs, "who ultimately were seeking to have the plat conveyance of outlot A declared 'null and void,'" were "required to file their claim under [the LDA]." *Id.* at 550. In addition to the rationales discussed earlier, we reasoned that allowing the plaintiffs' action to proceed as one to quiet title rather than pursuant to the LDA deprived parties or interested persons of "'substantial right[s] or privilege[s].'" *Id*. at 551-552 (citation omitted). Specifically, we stated:

> MCL 560.224a requires that certain fellow lot owners and affected utilities, as well as numerous governmental officials, to be made parties to a lawsuit to vacate, correct, or revise a plat. Here several of these necessary parties were not joined in the lawsuit and it is clear that they have a statutory right to participate fully in the lawsuit. [*Id.* at 552.]

There is no relevant difference between this case and *Martin*. The Harford Village plat's dedication language states that the plat shall be used "for the uses and purposes therein contained." Therefore, according to the Harford Village plat, North Street, East Street, and Cross Street were to be used as streets. Although these streets were never developed, by platting them, the purchasers of the platted property obtained "at least an irrevocable easement in the dedicated land." *Little*, 469 Mich at 564. See also *Martin*, 469 Mich at 548 n 18 (stating that "[a]s we explain[ed] in *Little*, a private dedication made before [the LDA] took effect conveyed an irrevocable easement, whereas MCL 560.253[1] now indicates that a private dedication conveys a fee interest"). Thus, all

13

purchasers of lots in the Harford Village plat had a right to rely on the dedications contained in the plat itself, each of which presumably affected (for the better) the value of their property.

In their quiet-title action, plaintiffs, just as the plaintiffs in *Martin*, sought, although not explicitly, to have a plat conveyance declared "null and void." That is, through their quiet-title action, plaintiffs sought to extinguish the irrevocable easement in North Street, East Street, and Cross Street that the plat conveyed to purchasers of lots in the Harford Village plat. Now that plaintiffs have succeeded in this, purchasers will no longer be capable of using the streets for the purposes for which they were granted, and any rights that are incident to the reasonable and proper enjoyment of the easement will also be extinguished. These facts are indistinguishable from those of *Martin*, in which the plaintiffs sought to exclude other purchasers of lots in the platted property from using a portion of outlot A. Plaintiffs in the instant case also sought to exclude other purchasers of lots in the platted property from exercising their rights in the platted streets. Thus, as this Court held in *Martin*, plaintiffs, who ultimately sought to have the plat conveyance of North Street, East Street, and Cross Street declared "null and void," should have been required to file their claim pursuant to the LDA.

As the majority correctly points out, unlike the plaintiffs in *Martin*, plaintiffs did not "expressly" seek to alter a recorded plat. But the majority's reasoning that *Martin* is distinguishable on this basis is troublesome and misdirected. Allowing plaintiffs to nullify the protections, and to undermine the purposes, of the LDA solely because their pleadings did not "expressly" request that the Harford Village plat be altered elevates

14

form over substance and incentivizes artful pleading and gamesmanship in an area of law-- the law of real property-- in which there should be little tolerance for such conduct.

Plaintiffs' complaint in this case sought the following relief:

> A decree that title to the land . . . is owned by the Plaintiff[s], . . . free and clear of any right, title, claim, or interests of the Defendants.

The only potential "right, title, claim, or interest" that the township has in the undeveloped, but platted, streets is derived from the plat itself. Plaintiffs were not, as the majority claims, merely seeking judicial recognition of title to protect their lands, but were seeking recognition that *usage rights derived from the plat* were no longer in existence and could no longer be relied upon by the township. According to the majority, plaintiffs should be relieved from the imperative of filing their claim under the LDA because they did not incant the magic words "plat," "vacate," "correct," or "revise" in their prayer for relief. Apparently, if plaintiffs' complaint *had* sought a decree that title to the land was held by plaintiffs, and that the township's interest in the property pursuant to the plat must be "vacated," they would have been required to file their claim under the LDA.

However, there is no meaningful difference between such a hypothetical complaint and plaintiffs' actual complaint, which requested that title be vested in them "free and clear of any right, title, claim, or interests" of the township. The certainty and stability of property rights in this state, and compliance with the Legislature's mandate, should not be allowed to rest upon so flimsy, and irrelevant, a distinction, one that effectively allows the plaintiffs themselves to determine the application of one of the foundational property laws of our state and the extent to which the property rights of

15

other persons will be protected. The majority's distinction not only erodes the protections of the LDA, but is in tension with Michigan's fact-pleading system, which only requires a complaint to contain a statement of the facts and the allegations reasonably necessary to inform the adverse party of the nature of the claims against that party. See MCR 2.111(B).

> [It is a] well-established principle that Michigan courts are "not bound by a party's choice of label for its action [because this would] put form over substance . . . ." Instead, as we [have] explained . . . , "the gravamen of plaintiff's action is determined by considering the *entire* claim." [*O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 527; 791 NW2d 853 (2010) (MARKMAN, J., concurring in the result only) (citation omitted; second alteration in original).]

Whether a plaintiff labels a claim as an action to quiet title or an action to "vacate, correct, or revise a recorded plat" cannot be allowed to control whether the action is, in fact, treated as a traditional action to quiet title or as an action to "vacate, correct, or revise a recorded plat."

> This established principle ensures that the governing *law*, and not the label the parties attach to that law, controls the outcome of an action. As the United States Supreme Court has observed, any other approach would allow a party to avoid the requirements of a legislative mandate simply by artful pleading. See *Allis-Chalmers Corp v Lueck*, 471 US 202, 211; 105 S Ct 1904; 85 L Ed 2d 206 (1985). [*Id.*][7]

---

[7] The majority rejects the claim that its opinion invites artful pleading or gamesmanship by asserting that "[p]laintiffs in this case merely pleaded what they sought to accomplish, which was to establish a substantive interest in property on the basis of adverse possession." *Ante* at 20-21. By sanctioning a rule that enables plaintiffs' pleadings to determine whether the requirements of the LDA must be satisfied, the majority incentivizes plaintiffs to obscure what may be the *necessary consequences* of their claims in order to avoid the requirements of the LDA. It cannot be overemphasized that the premise of the LDA is that interests *other* than those of the plaintiff must be taken into account in the legal process as a prelude to a plat being rendered inaccurate. It is the sum

Quieting title to the disputed streets in plaintiffs established plaintiffs as the sole owners of the property, to the exclusion of all others in the platted area. See *Lawson v Bishop*, 212 Mich 691, 699; 180 NW 596 (1920) (noting that when title is established by adverse possession, the "rights of all others claiming any interest in the land have been extinguished"). This was done outside the confines of the LDA, which requires that an extensive group of parties be served and afforded an opportunity to participate in the litigation, including everyone owning property located within 300 feet, utility companies, the municipality, and others.[8] As a result, the fundamental purpose of the LDA, that "plats on file remain accurate," has been circumvented. *Martin*, 469 Mich 551 n 24. We did not permit this in *Martin*, and we should not permit it in this case. *Martin* properly

_____

of such *private* interests, including but not *limited* to that of the plaintiff, that conduces to define the *public* interest that informs the LDA. It should not be viewed as surprising that at least some plaintiffs might prefer to introduce as few competing private interests into the legal process as possible in defining their own property rights, and they have now been afforded the opportunity by the majority to avoid the imperatives of the LDA through artful pleadings and gamesmanship. The plaintiffs in *Martin* also simply pleaded what they "sought to accomplish"-- a quiet-title action declaring themselves to be the sole owners of outlot A-- but, somehow, this Court was able in that case to look beyond such pleadings, and to what the plaintiffs "sought to accomplish," in concluding that "[a]llowing this action to proceed as one to quiet title is contrary to the [LDA] . . . ." *Martin*, 469 Mich at 550.

[8] "Others" that must be joined include what is now the Department of Licensing and Regulatory Affairs (as the successor to the State Treasurer), the drain commissioner, and the chairperson of the board of county road commissioners. In addition, depending on the nature of the plat to be "vacate[d], correct[ed], or revise[d]," MCL 560.221, MCL 560.224a requires that additional parties be joined. For example, if the proposed change includes or borders a state highway or federal aid road the director of the state transportation department and the director of the Department of Natural Resources must be joined, MCL 560.224a(f); and if the proposed change involves a lake or stream, the Department of Natural Resources must be joined, MCL 560.224a(g).

17

compels the conclusion that plaintiffs were required to file their action pursuant to the LDA because that act constitutes "the exclusive means available when seeking to vacate, correct, or revise a dedication in a recorded plat . . . ." *Id.* at 542-543.[9]

Requiring plaintiffs' lawsuit to be filed in accordance with the LDA would also be consistent with *Hall v Hanson*. In *Hall*, the plaintiffs brought suit, claiming that the defendants had interfered with their right to use a publicly platted boulevard. The defendants counterclaimed, "seeking, among other things, to quiet title to the disputed property in themselves and to enjoin plaintiffs from doing anything other than accessing the surface of the lake for reasonable activities." *Hall*, 255 Mich App at 274. As in this case, the plaintiffs argued in the trial court that the defendants' quiet-title action was improper because the exclusive way to "vacate, correct, or revise" the plat was through an action under the LDA. *Id.* at 278-279. Nevertheless, the trial court quieted title to the disputed boulevard in the defendants. The Court of Appeals reversed and held that, because the defendants "sought to vacate or otherwise alter the plats dedicating the

_____

[9] The majority concludes that in contrast to *Martin*, "plaintiffs' successful quiet title action leaves the plat unchanged, but inaccurate." *Ante* at 14. Perhaps this would be better stated as "unchanged, and *therefore* inaccurate." That the plat remains "unchanged, but inaccurate" following plaintiffs' successful quiet-title action is precisely the reason that they should be required to file their action under the LDA. The LDA provides a statutory scheme to ensure that all persons with a potential interest in a plat are allowed to participate in any action to vacate, correct, or revise it. Allowing a plat that was accurate on Monday to become inaccurate on Wednesday after a quiet-title decision on Tuesday, in the absence of all parties who are entitled to assert their contrary claims or competing interests, is simply incompatible with the Legislature's design in the LDA. Moreover, once again, there is no meaningful distinction between this case and *Martin*. If in *Martin* this Court had affirmed the quieting of title in the plaintiffs, the plat, under the majority's reasoning, would also have remained "unchanged, but inaccurate."

boulevard to the public, they should have brought their [counterclaim] pursuant to the LDA." *Id.* at 286. The instant case is essentially indistinguishable from *Hall*.[10] Plaintiffs, as with the defendants in *Hall*, sought to quiet title to the disputed streets free and clear of any claim of right or interests that the township had pursuant to the Harford Village plat, and the outcome here should be no different.[11] Because plaintiffs for all

_____

[10] Despite citing *Hall* as instructive authority, the majority distinguishes *Hall* on the grounds that

> [t]he defendants in *Hall* did not claim an interest in the street by virtue of adverse possession or on any other basis independent of the plat. Rather, the defendants' claimed interest in the street at issue was directly traceable to and arose from the plat and the platting process. If the street were vacated—that is, if a court determined that the plaintiffs had failed to accept the dedication or abandoned the street—the defendants would, by operation of law, own the vacated portions of the street because, as reflected in the plat, they were abutting landowners. [*Ante* at 14 n 45 (emphasis omitted).]

It is, of course, true that the specific property interest asserted by the defendants in *Hall* was not identical to the specific property interest asserted by plaintiffs in this case, but that is a distinction of no relevance. What *is* relevant is that *Hall* illustrated one means by which the terms "vacate," "correct," and "revise" could be implicated in a property claim in which the plaintiffs did not explicitly assert an interest in "vacating," "correcting," or "revising" a plat. Surely, *Hall*'s proposition that courts addressing property claims will look to the true nature of what a party is seeking, and to the real impact thereof, was not limited to the specific details of the asserted interest in that case. Instead, a reasonable interpretation of the LDA would have the *Hall* rule encompass *any* action that had the necessary effect of "vacating," "correcting," or "revising" a plat. The majority distinguishes *Hall* on the grounds that the grass on the property in question is fescue rather than bluegrass.

[11] The majority attempts to distinguish *Martin* and *Hall* because unlike the factual situations in those cases, "plaintiffs' interest [here] in the disputed property did not depend on the plat, the plat's dedication language, or whether the township abandoned the streets." *Ante* at 18-19. But again, this distinction is meaningless. Although the issue in those cases may have concerned the claimants' interests in platted property, MCL 560.222 does not limit its application to cases that pertain to platted property; instead, it applies to actions that seek to "vacate, correct, or revise a recorded plat or any part of a

19

practical purposes sought to vacate or otherwise alter the plat, they should have been required to bring their complaint under the LDA.[12]

### III. HARMONIZATION OF STATUTES

The majority asserts that there is a relevant distinction for purposes of compliance with the LDA between quieting title by adverse possession in a manner that would alter a plat and requesting the alteration of that plat.[13] As a result, because plaintiffs here only sought to do the former, they were relieved of any obligations under the LDA. The majority is, of course, correct that our law recognizes a distinction between actions to quiet title, MCL 600.2932, and actions to "vacate, correct, or revise a recorded plat,"

---

recorded plat." The fact that plaintiffs' interest in the disputed property does not arise from the plat is irrelevant; the important thing is that, as a result of legal action, the plat would be "vacated," "corrected," or "revised." Moreover, *the township's* property interest *does* arise from the plat, and it is entitled to the protections of the LDA.

[12] While holding that the defendants' action was required to be brought pursuant to the LDA, *Hall* also decided that it was unnecessary to remand for additional proceedings under the LDA because the bench trial was "full and fair." *Hall*, 255 Mich App at 286; see also *Binkley v Asire*, 335 Mich 89; 55 NW2d 742 (1952). Although I have no doubt that defendants in this case received both a "full and fair" trial, I would not fashion the same remedy. While such a remedy may have been appropriate in *Hall* because all necessary lot owners, as well as numerous governmental officials, had been joined as parties, here by contrast, a number of necessary parties under the LDA were absent. In my judgment, plaintiffs should be allowed to amend their complaint, and to add all necessary parties. See *Martin*, 469 Mich at 552.

[13] The majority refers to *Olsen v Grand Beach*, 282 Mich 364; 276 NW 481 (1937), and *Howard v Berrien Springs*, 311 Mich 567; 19 NW2d 101 (1945), for this proposition, but those cases have little relevance to the instant case. While both acknowledge that title to platted property may be established by adverse possession-- an entirely unremarkable proposition-- neither purported to answer whether plaintiffs *must* bring an adverse-possession claim pursuant to the LDA. Further, those cases were decided before the 1978 amendment of MCL 560.222 that made compliance with the LDA *mandatory* for actions seeking to "vacate, correct, or revise a plat."

20

MCL 560.222. But what the majority fails to acknowledge is that, while under *ordinary* circumstances these actions serve different purposes and do not impinge on one another, under somewhat *less ordinary* circumstances, the actions overlap and do impinge on one another, as in this case, in which a quiet-title action has directly and necessarily altered a plat. This overlap, or tension, will not arise in every quiet-title action, and it will not arise in every adverse-possession action, but it has arisen in this case. Under these specific circumstances, the quiet-title action must be brought under the auspices of the LDA because, necessarily and indisputably, if successful, it will cause a recorded plat to be "vacated, corrected, or revised," and the "exclusive" means of doing so is through the LDA.[14]

Because the majority sees no tension between these statutes-- the majority views it as of little moment whether a plaintiff avails himself of the quiet-title statute or the LDA-- it engages in no effort to harmonize these statutes. On the other hand, because I believe that there is tension between these statutes under the instant circumstances, and because I believe that it is of *considerable* moment-- in terms of the procedural rights of affected persons, the public interest in accurate platting, and regard for the Legislature's intentions in enacting the LDA-- an effort to harmonize these statutes is required, in my

---

[14] *Martin* recognized this point when it remanded the plaintiffs' quiet-title action to the trial court to proceed under the LDA. If *Martin* had followed the majority's approach here, it would have fashioned the same remedy as the majority: an affirmance of the trial court's grant of title to the plaintiffs, but a nullification of that portion of the trial court's order revising the plat. But *Martin* did not do this, and instead held that the plaintiffs' quiet-title action was required to be brought under the LDA.

21

judgment, and such harmonization compels the conclusion that plaintiffs must file under the LDA.

First, it is axiomatic that the more specific statute prevails over the more general. *Jones v Enertel, Inc*, 467 Mich 266, 270-271; 650 NW2d 334 (2002). "[T]o determine which provision is truly more specific and, hence, controlling, we consider which provision applies to the more narrow realm of circumstances, and which to the more broad realm." *Miller v Allstate Ins Co*, 481 Mich 601, 613; 751 NW2d 463 (2008). The quiet-title statute provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff . . . ." MCL 600.2932(1). This statute, which applies to any person claiming any interest in property, seemingly applies to plaintiffs' action seeking to establish title to the land free and clear of the township's interest. On the other hand, MCL 560.222 provides the exclusive means available to "vacate, correct, or revise a recorded plat or any part of a recorded plat . . . ." This statute is applicable only to a much smaller subset of property actions. Thus, because MCL 600.2932 applies to all property actions and MCL 560.222 applies only to a limited subset of property actions, it would seem that the latter, the more specific provision, would tend to control.

Second, there are relatively few quiet-title actions under MCL 600.2932 that also seek to "vacate, correct, or revise" a plat, while nearly all actions that seek to "vacate, correct, or revise" under MCL 560.222 also seek to quiet title. See, e.g., *Martin*, *supra*; *Hall*, *supra*. That is, actions to quiet title are rarely accompanied by a claim to "vacate,

22

correct, or revise," while actions to "vacate, correct, or revise" are often accompanied by a claim to quiet title. Not only does this suggest that the more efficient means of proceeding in cases in which these claims coexist would be through an LDA action, but it underscores that the likely legislative intention when these statutes overlapped was that the more specific statute would control. If, after all, in a relatively high proportion of "vacate, correct, or revise" cases there would exist an alternative quiet-title action, it would seem that this would create a reasonably high likelihood that the Legislature's intention to render plats increasingly accurate over time through the LDA could well be undermined. By contrast, there would be a relatively small proportion of quiet-title cases in which there would be the alternative of a "vacate, correct, or revise" action, and therefore a reasonably small likelihood that the LDA could interfere in any significant way with the Legislature's intentions in enacting the quiet-title statute.

Third, the potential harm that might arise if plaintiffs proceeded with their cause of action pursuant to the LDA, rather than in an action to quiet title, is inconsequential in comparison with the harm that might arise if plaintiffs proceeded with their cause of action as one to quiet title. Specifically, if plaintiffs proceed with their quiet-title action under the LDA, the only apparent harm is that a greater burden would be placed on plaintiffs to apprise persons with a potential interest in litigation of the pendency of such litigation. By contrast, the potential harm of not bringing an action to "vacate, correct, or revise" under the LDA is that persons with a potential property interest in ongoing litigation would not be apprised at all of such litigation and, as a result, would either be prejudiced in later asserting their interests or compelled to file new lawsuits, or that later property transactions would be thrown into confusion as a result of inaccurate plats and

23

affected persons compelled to file new lawsuits. Of these respective harms, I believe that the latter is far more potentially injurious to the integrity of the law, which again argues in favor of resolving the tension between these statutes in favor of compliance with the LDA.

Finally, although the Legislature has provided plaintiffs with two avenues to assert their interests in the disputed property, the "doctrine of last enactment" also supports the position that plaintiffs' quiet-title action must yield to the mandate that an action seeking to "vacate, correct, or revise" a plat be brought under the LDA.

> That doctrine presumes that the Legislature is aware of the existence of the law in effect at the time of its enactments and recognizes that, since one Legislature cannot bind the power of its successor, existing statutory language cannot be a bar to further exceptions set forth in subsequent, substantive enactments. [*Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 713; 664 NW2d 193 (2003).]

Section 222 of the LDA was substantially altered in 1978 to state that a party seeking to "vacate, correct, or revise" a recorded plat "*shall*" file a complaint pursuant to the LDA. MCL 560.222, as amended by 1978 PA 367. On the other hand, MCL 600.2932 has not been substantively altered since its enactment in 1961. Compare 1961 PA 236, § 2932 and MCL 600.2932, as amended by 1964 PA 8. The fact that the LDA is the most recent statement of the Legislature again argues in favor of compliance with the requirements of the LDA.

IV.  FURTHER RESPONSE TO MAJORITY

A.  ESTABLISHING TITLE IN LDA ACTIONS

The majority concludes that in this case establishing title is a necessary prerequisite to the alteration of the plat.  I agree.[15]  If the plat had been simply altered without a judicial decree that plaintiffs were the true owners of the property, the LDA would have served as the vehicle to "*establish* an otherwise nonexistent property right," which would be contrary to our holding in *Tomecek v Bavas*, 482 Mich 484, 496; 759 NW2d 178 (2008) ("The LDA was never intended to enable a court to establish an otherwise nonexistent property right.").[16]  But that does not mean that plaintiffs should be relieved from filing their cause of action pursuant to the LDA.  MCL 560.223 requires the plaintiff in an LDA action to set forth the "reasons for seeking the vacation, correction, or revision" of a plat, which in this case would obviously be that the plaintiff acquired an interest in the platted property by adverse possession.[17]  The trial court would

---

[15] In supposing that this dissent would hold that "an LDA action [is] a prerequisite to establishing an adverse possession claim," *ante* at 12 n 39, the majority misapprehends this dissent.  The argument here is not that an LDA action is a prerequisite to the establishment of an adverse-possession claim, but only that, when an adverse-possession claim overlaps an action to "vacate, correct, or revise a plat," the former must be brought within the LDA  in order to ensure that the protections afforded by the LDA inure to the benefit of persons whom the statute was intended to protect.

[16] Although I continue to believe that *Tomecek* was correct that an LDA action seeking to "vacate, correct, or revise a recorded plat" does not enable a court to establish an otherwise nonexistent property right, Justice CAVANAGH, who joins this opinion, does not.  See *Tomecek*, 482 Mich at 499 (CAVANAGH, J., concurring in part and dissenting in part).  However, neither of our positions in *Tomecek* is inconsistent with the position asserted in this dissent.

[17] Contrary to the majority's position, the doctrine of standing would not bar an adverse possessor from proceeding in this manner, even one who was not already the owner of a

25

then proceed with the case as with any other adverse-possession action, and the plaintiff would be required to show "clear and cogent proof of possession that [has been] actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under color of claim of right." *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957). If the plaintiff is able to meet this burden of proof, the trial court would then "vacate, correct, or revise all or a part of a recorded plat," as provided in sections 222 to 229 of the LDA. MCL 560.221. In this way, persons who purchase property in reliance on the representations made in a plat, as well as future purchasers of platted property, are protected by the requirements of the LDA, and the plat remains accurate because a new plat must then be prepared in whole or part. MCL 560.229(1).[18]

Indeed, the majority itself sees "no reason why plaintiffs could not have addressed both the adverse possession claim and the LDA claim in bifurcated proceedings . . . in

---

platted lot. MCL 560.222 provides that a complaint may be filed by "the owner of a lot in the subdivision, a person of record claiming under the owner, or the governing body of the municipality in which the subdivision covered by the plat is located." Because title vests automatically in the adverse possessor upon expiration of the period of limitations, *Gardner v Gardner*, 257 Mich 172, 176; 241 NW 179 (1932), the adverse possessor would be an "owner of a lot in a subdivision" and thus would have standing to file a complaint under MCL 560.222.

[18] Requiring plaintiffs to proceed in this manner does not run afoul of *Tomecek* because the LDA is not being used here to create substantive property rights. Rather, the doctrine of *adverse possession* itself created these rights, which passed to plaintiffs upon the expiration of the requisite period of limitations. *Gardner*, 257 Mich at 176. Thus, the LDA does not serve as a vehicle to create substantive property rights, but only serves as the "tool to validate property rights that already exist[]." *Tomecek*, 482 Mich at 496 (opinion by KELLY, J.).

26

which the court would have first addressed the quiet title claim and then, if necessary, resolved any issues regarding the plat[.]" *Ante* at 21.  However, it simply believes that "there is nothing in the LDA that *requires* a litigant to proceed in that manner." *Ante* at 21.  To me, what compels a litigant to proceed in that manner is, equally simply, that the LDA constitutes the *exclusive* manner by which to "vacate, correct, or revise" a plat.  The township's easement is a "part of the plat," and when that interest is altered-- or in this case entirely terminated-- outside the scope of the LDA, the mandate that actions seeking to "vacate, correct, or revise" must be undertaken in a particular manner is disregarded.  Although plaintiffs could establish title in a quiet-title action, if the LDA and the quiet-title statutes are to be harmonized, plaintiffs must file such an action under the LDA.  If nothing requires a litigant to proceed in that manner, and if a litigant can proceed in a piecemeal fashion by bringing only a quiet-title action, and then-- *and only if he so chooses*-- a subsequent action to alter the plat under the LDA, then why did this Court reverse in *Martin*, in which the plaintiffs proceeded in the identical manner now deemed acceptable by the majority?  Our analysis in that case answers this question, and it merits reiteration:

> *Allowing this action to proceed as one to quiet title is contrary to the statutes*, which not only outline the specific procedures to be followed and what must be pleaded, but also require that an extensive group of parties be served, including everyone owning property located within three hundred feet of the lands described in the petition, the municipality, the State Treasurer, the drain commissioner, the county road commissioners, affected public utilities, and, in certain instances, the directors of the Department of Transportation and the Department of Natural Resources.  [*Martin*, 469 Mich at 550-551 (emphasis added).]

27

## B.  *MARTIN v BELDEAN*

The majority errs in its understanding of *Martin v Beldean*, both factually and legally.  As already discussed, *Martin* held that a plaintiff "seeking to vacate, correct, or revise a dedication in a recorded plat" must file a lawsuit pursuant to the LDA.  *Martin*, 469 Mich at 542-543.  This precedent is now made the subject of hypertechnical distinctions that have no grounding in either the LDA or in *Martin* itself.  Given the importance of *Martin* to this case, the majority's analysis warrants further response.

The majority states that this dissent "incorrectly concludes that *Martin* requires plaintiffs in the instant case to file under the LDA," because

> the *Martin* plaintiffs had a *preexisting* substantive property right—reflected in the plat and documented by a deed—in the plat whose language they sought to have declared void.  Thus, the issue in *Martin* concerned whether the plat's language accurately reflected the parties' preexisting rights *as outlined* in the plat itself.  Furthermore, the relief sought by the *Martin* plaintiffs' quiet title action was to conform the plat at issue to those preexisting property rights.  [*Ante* at 14.]

The majority's points are straightforward, but its asserted distinctions fail.  First, the *Martin* plaintiffs did not have a "preexisting substantive property right . . . reflected in the plat," because the plat reflected only that the disputed property, outlot A, was "'reserved for the use of the lot owners.'"  *Martin*, 469 Mich at 545.  Thus, contrary to the majority's assertion, the plat granted absolutely no rights to the plaintiffs in outlot A, but instead, just as the plat in this case, granted use rights to someone *other than* the plaintiffs.[19]  In *Martin*, the plat granted use rights to the other 21 lot owners; in this case,

---

[19] In fact, it was not until the plaintiffs applied for a permit to build on outlot A that they learned that it had been dedicated for the use of the other lot owners.  *Martin*, 469 Mich at 544-545.

the plat granted use rights to assorted other persons, including the township. Thus, the *Martin* plaintiffs had no preexisting substantive property right reflected in the plat.

Second, just as in *Martin*, plaintiffs here "had a preexisting substantive property right"-- the right of title which passed upon the expiration of the statutory period of limitation-- "in the plat whose language they sought to have declared void." The majority might better explain why the *Martin* plaintiffs, whose claimed title to the disputed property was established by a deed, were required to bring their quiet-title action pursuant to the LDA while plaintiffs in this case, whose title to the disputed streets was established by adverse possession, are not.[20] Any putative distinction based on the *method* of acquiring title lacks statutory support and suggests, without any apparent basis in the law, that title acquired by deed constitutes a legally superior method of acquiring title for purposes of an LDA action. In any event, plaintiffs here *did* acquire title to the disputed streets by deed. The trial court found that North and East Streets were included in a deed to General William G. Beach (plaintiffs' predecessor) in 1853, and that Cross Street was included in a deed to the Beach family in 1897. Accordingly, even under the

_____

[20] In this regard, the majority states that "plaintiffs had no recognized, recorded, preexisting property rights in the disputed land," *ante* at 14, but I fail to understand the relevance of this distinction for two reasons. First, the majority cites no authority for the suggestion that a plaintiff must have some type of "recognized" and "recorded," "preexisting" property right in the disputed land. MCL 560.222 contains no such requirement. Second, plaintiffs *do* have a "recognized" property right. As even the majority acknowledges, expiration of the period of limitations vests title in the party claiming adverse possession, *Gardner*, 257 Mich at 176, and, further, plaintiffs also have deeds that reflect their property rights in the disputed streets. Thus, plaintiffs *do have* a "recognized recorded preexisting property right[] in the disputed land," as now required by the majority for the LDA to be applicable.

majority's interpretation of *Martin*, because plaintiffs did have a "preexisting substantive property right . . . in the plat whose language they sought to have declared void," they are required to file their action pursuant to the LDA.

Third, the majority repeatedly emphasizes that the *Martin* plaintiffs' deed "preexisted" the filing of the plat. This purported distinction is again without merit for two reasons: (1) MCL 560.222 contains no requirement that *only* claims based on property rights that "predated" or "preexisted" the filing of a plat must be brought under the LDA and (2) *Martin* itself did not rely on this distinction, or even allude to it, in holding that the plaintiffs' action had to be filed under the LDA. Presumably, this is because the *Martin* plaintiffs and their predecessors received a deed to outlot A *after* the subdivision was platted, not before, as asserted by the majority. See *Martin v Redmond*, 248 Mich App 59, 61; 638 NW2d 142 (2001).

Fourth, the majority states that because the plaintiffs had a preexisting property right reflected in the plat whose language they sought to have declared void, the issue in *Martin* concerned "whether the plat's language accurately reflected the parties' preexisting rights *as outlined* in the plat itself," *ante* at 14. Again, I disagree. The *Martin* plaintiffs did not claim that the plat's dedication of outlot A was in error[21]-- that is, they did not claim that the plat inaccurately dedicated outlot A for the use of all owners in the subdivision because that would have been inconsistent with their deed. Instead, the plaintiffs in *Martin* only claimed that the dedication had expired pursuant to the terms of

---

[21] Nor could they have, as the owner at the time of the plat's dedication, specifically signed the dedications and restrictions that depicted outlot A as among those reserved for the use of all lot owners.

the plat itself, which limited all restrictions, conditions, covenants, and rights to 25 years; by laches or estoppel, as the trial court had held; or because the dedication was invalid, as the Court of Appeals had held. See *Martin*, 248 Mich App at 62-63. This Court then addressed only the following issues: (1) the Court of Appeals' holding that a private dedication in a recorded plat is invalid under Michigan law, and (2) whether the plaintiffs, who ultimately sought to have the plat conveyance of outlot A declared "null and void," were required to file their claim under the LDA. *Martin*, 469 Mich at 542-543. From all of this, it seems clear that the issue in *Martin* was not, as the majority claims, whether the plat language "accurately" reflected the "parties preexisting rights *as outlined* in the plat itself," but only whether the dedication was valid in the first place and, if it was, whether plaintiffs could alter that dedication outside the confines of the LDA. Nothing in *Martin* concerned the "accuracy" or "scope" of existing rights under a recorded plat, and thus the majority's purported distinctions are inapt.

Fifth, the majority states that "the relief sought by the *Martin* plaintiffs' quiet title action was to *conform* the plat at issue to those preexisting property rights." *Ante* at 14 (emphasis added). I fail to see how the *Martin* plaintiffs, who filed suit to declare their interest obtained by deed superior to the interests of those who claimed an interest in the property as a result of the plat's dedication language, sought to "conform the plat at issue," but plaintiffs here did not. Did not *both* sets of plaintiffs file suit to quiet title to establish their respective preexisting titles as superior to those who claimed an interest in the property stemming from the plat's dedication language? Did not *both* sets of plaintiffs file suit to declare "null and void" that very dedication language? Yet

31

according to the majority, only the *Martin* plaintiffs sought to "conform" the plat to their preexisting property rights. The distinctions are invisible.

Sixth, under the majority's holding, if a party is only required to file a cause of action pursuant to the LDA "[i]f [his] interest in land is traceable to the plat or the platting process," *ante* at 18, then it must follow that *Martin*, a recent and unanimous decision of this Court, was wrongly decided. As already noted, the *Martin* plaintiffs' interest in the platted property arose from a deed conveyed *after* the property was platted. Their interest was neither "traceable to the plat" nor to "the platting process." Consequently, under the majority's holding, our decision in *Martin*, requiring the plaintiffs' quiet-title action to proceed under the LDA, was in error because the LDA could not have provided the necessary relief. Yet the majority does not overrule *Martin*. This leads to the second practical question arising from the majority's opinion, in addition to how plats are to remain as accurate depictions of the realities of property boundaries in Michigan: If the majority cannot reconcile its holding in this case with the Court's holding in *Martin*, how are the bench and bar to comprehend the nuances of difference apparently recognizable to the majority that justify the disparate treatment of these cases? The majority leaves in place alternative, and incompatible, formulations of the law, each of which will be invoked as convenient by different plaintiffs, defendants, and judges.

In the final analysis, the majority, in attempting to justify its holding that plaintiffs are not required to file their claims under the LDA, deeply misunderstands *Martin*, both factually and legally. The *Martin* plaintiffs had neither a "preexisting substantive property right . . . reflected in the plat" nor a deed that "preexisted" the filing of the plat,

32

and their case did not concern the "accuracy" or "scope" of the plat at issue. In addition, the *Martin* plaintiffs' interest in the land was not "traceable to the plat or the platting process," as now required by the majority in order for the LDA to apply. What the *Martin* plaintiffs *did* have was a deed that reflected their interest in the property, and they *did* seek to "conform the plat at issue" to that deed, but, as discussed, those are similarities rather than differences. Thus, just as in *Martin*, "plaintiffs, in seeking to vacate, correct, or revise the plat, [are] required to file their lawsuit under the Land Division Act." *Martin*, 469 Mich at 552.[22]

## C. THRESHOLD QUESTION

According to the majority, the "basic disagreement" between our respective analyses is that this dissent views LDA and quiet-title actions as sometimes "overlap[ping]" and in tension with each other, and thus concludes that it is necessary to harmonize the relevant statutes, while the majority views those actions as separate and distinct, and thus concludes that it is unnecessary to harmonize. *Ante* at 20 n 57. However, the disagreement between our opinions is even simpler and more fundamental, in my judgment. The question is simply whether plaintiffs' quiet-title action seeks to

---

[22] Notwithstanding the foregoing analysis, the majority maintains that the "factual and legal differences that distinguish the instant matter from *Martin* compel the result of this case." *Ante* at 17 n 53. Never mind that the supposed "factual differences" are nonexistent-- the *Martin* plaintiffs did not have a preexisting property right reflected in the plat, they did not have a deed that preexisted the filing of the plat, and their case did not concern the accuracy or scope of the plat-- both bench and bar are now left utterly without guidance as to how supposed "factual and legal differences" in future cases should be understood in characterizing these as either *Martin* or *Beach* cases. The majority's legacy here is to leave property law murkier and increasingly subject to judicial discretion and arbitrariness.

"vacate, correct, or revise a recorded plat or any part of a recorded plat." If answered in the affirmative, plaintiffs must file this action pursuant to the LDA, and only then would the statutes have to be harmonized. If answered in the negative, plaintiffs may proceed with their action as one to quiet title only, without the need to comply with the LDA. Thus, the critical question once again is whether this particular quiet-title action seeks to "vacate, correct, or revise a recorded plat or any part of a recorded plat."

On this note, it is worth reflecting again on the majority's approach to answering this question. According to the majority, plaintiffs only seek to establish a substantive interest in property and are unconcerned with "vacat[ing], correct[ing], or revis[ing] the plat." This analysis is straightforward, but straightforwardly wrong. A plaintiff's subjective and self-characterized interest cannot be the determining factor in assessing whether an action seeks to "vacate, correct, or revise a recorded plat or any part of a recorded plat," for, as discussed, *other* persons may also have affected property interests in the plat, and the fundamental premise of the LDA is that each of these is entitled to be heard in actions "vacat[ing], correct[ing], or revis[ing] the plat." Each is entitled to notice, to participate fully in the lawsuit, and to have his or her interests accurately depicted on the plat. By focusing exclusively upon a plaintiff's subjective and self-characterized interests, the majority: (1) fails to take other persons, and other interests, into account, as required by the LDA, (2) fails to adhere to the express language of the LDA, which requires that an LDA action be undertaken whenever the "vacat[ion], correct[ion], or revis[ion]" of a plat is sought-- not merely when it has been *stated* that it is sought-- and instead substitutes its own "crucial limitation," limiting the LDA to cases in which the plaintiff has a property interest "traceable to the plat or the platting process,"

34

and (3) substantially undermines the LDA as a means for ensuring the accuracy of plats in this state.

## V.  CONCLUSION

The Land Division Act mandates that the exclusive way to "vacate, correct, or revise a recorded plat or any part of a recorded plat" is to file a lawsuit pursuant to the LDA.  In this case, plaintiffs' quiet-title action necessarily sought to "vacate, correct, or revise" the Harford Village plat, and thus plaintiffs should have been required to bring their cause of action pursuant to the LDA.  In my judgment, if plaintiffs wish to proceed under the LDA, they should be allowed to amend their complaint and to add all necessary parties.  The majority's contrary interpretation undermines the primary purpose of the LDA, which is to ensure that plats on file remain accurate.  The majority's holding will introduce greater uncertainty and instability into this state's property law, while incentivizing artful pleadings and gamesmanship.  Under the law of this case, Michigan plats are destined over time to become increasingly more inaccurate and increasingly less reflective of actual property interests in this state.  Accordingly, I respectfully dissent and would reverse the judgment of the Court of Appeals.

Stephen J. Markman
Michael F. Cavanagh